Argued June 10, affirmed July 14, 1966

# STATE OF OREGON *v.* KENNETH ELMER HODGDON

416 P. 2d 647

*Elliott B. Cummins,* McMinnville, argued the cause and filed a brief for appellant.

*Carl H. Francis,* District Attorney, McMinnville, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and GOODWIN, DENECKE, HOLMAN and HAMMOND, Justices.

HAMMOND, J. (Pro Tempore).

Defendant appeals from a judgment of conviction upon two counts contained in an indictment, each charging negligent homicide. The indictment charges that the defendant drove his automobile in a grossly negligent manner on U. S. Highway 99W and that a collision occurred between his car and that in which the deceased persons were riding, causing their deaths.

The record reveals that the defendant had been in a cocktail lounge called Shaw's, and later in an eating establishment in Newberg, until the early morning hours of the day in question. He had been seen drinking but it is not known what the beverage was. At about 3:30 a.m. he drove to McMinnville alone in his car, following another car in which were three women acquaintances. During most of that trip he followed the other car very closely but on occasion would speed up to pass the women's car and then slow down in front of it. At least once he drove off the highway. His driving was described as very erratic and frightening to the women. The driver of the other car drove rapidly to keep the defendant's car from running into them.

The testimony of the women in the other car was that on arrival in McMinnville the driver of their car drove into the driveway of the home of one of the occupants of that car. The defendant stopped his car in front of the residence and remained in his car without attempting to communicate with the women. He stayed there for some time. During part of the period he was seen to be inert on the front seat of his car with his radio buzzing but not playing. He was not seen to leave.

The defendant was questioned by a police officer in the hospital on the day of the accident. The officer's testimony is that the defendant stated that he had been in and out of Shaw's cocktail lounge from 9:00 p.m. until 2:30 a.m. and that he then went to a restaurant to eat. He is reported to have stated that he left the restaurant at 3:30 and drove to McMinnville to see a friend of his brother's; that he stayed there 15 minutes and then left McMinnville and headed toward Newberg.

According to the police officer, the defendant stated to him that he could barely remember going through Lafayette on his return trip, "and the next thing he could remember is that he was in the hospital and that he must have dozed off." The accident happened near the easterly edge of Lafayette. When defendant's car was seen by the occupants of the car in which decedents were riding, defendant was driving easterly and was four feet 10 inches over into the westbound lane of travel. The evidence indicates that defendant's car left 49 feet of skid marks prior to the headon collision. The accident occurred between 5:15 and 5:30 a.m. on July 24, 1965. It was nearly daylight. The weather was clear and dry.

Defendant moved for a judgment of acquittal at the conclusion of the state's case in chief and for a directed verdict of not guilty after both parties had rested. Both motions were denied and defendant claims error upon the ground that there was no evidence upon which it could be determined that the defendant was guilty of gross negligence.

Separate assignments of error object to the instruction that the court gave to the jury on the subject of gross negligence and to the court's failure to give the defendant's requested instruction on the same subject.

For an understandable treatment of these assignments of error as well as the three remaining ones, it appears necessary to examine our definition of gross negligence. The statute under which the indictment was brought states: "When the death of any person ensues within one year as the proximate result of injuries cause by * * * [t]he driving of any motor vehicle * * * in a grossly negligent manner * * * the person driving such vehicle * * * is guilty of negligent homicide * * *." ORS 163.091.

■ While words or expressions may have connotations or meanings that do not strictly apply to their use in all situations or under all conditions, it is important to here state that "gross negligence," as the term is expressive of a pattern of human misbehavior, is the same when applied to civil law as when used to define an ingredient of a crime.

The legislature has defined gross negligence as follows:

"\* \* \* \* \*

"(2) 'Gross negligence' refers to negligence which is materially greater than the mere absence of reasonable care under the circumstances, and which is characterized by conscious indifference to or reckless disregard of the rights of others." ORS 30.115 (2).

■ By dissecting the statute for purposes of examination we find that gross negligence is (1) negligence accompanied by the actor's conscious indifference to the rights of others, or (2) negligence which is increased in magnitude by the actor's reckless disregard of the rights of others. So in gross negligence, we find not simply an inadvertent breach of duty or imprudent conduct (as in ordinary negligence), but the violation of the duty to others is so flagrant as to evidence an indifference to or reckless disregard of the rights of others.

The above statute was enacted by the Oregon legislature in 1961, approximately one year after this court handed down its opinion in the case of *Williamson v. McKenna*, 223 Or 366, 354 P2d 56 (1960). In that case an exhaustive analysis was made of the many facets of the problem of gross negligence. As a guide to be used in future cases this court therein cited with approval

2 Restatement, Torts, § 500 as a proper definition of the term "reckless disregard of the rights of others," as follows:

> "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

This court has repeatedly approved the gross negligence definition set forth in the Williamson case in decisions rendered subsequent to the enactment of ORS 30.115 (2). There is no disharmony between the statute and either the bare Restatement rule or the court's expansion on that rule as set out in *Williamson v. McKenna,* supra. *Zumwalt v. Lindland,* 239 Or 26, 396 P2d 205 (1964); *Chard v. Rios,* 238 Or 74, 393 P2d 156 (1964); *Roehr v. Bean,* 237 Or 599, 392 P2d 248 (1964); *Gray v. Galantha,* 235 Or 521, 385 P2d 746 (1963).

The trial judge defined and described gross negligence with obvious care toward being sure that the jury would grasp the meaning of the term. He quoted the statute (ORS 31.115 (2)), read almost verbatim 2 Restatement, Torts, § 500, and explained that it was another definition of the term. He used other understandable definitions, not inconsistent with the statute or with the Williamson case, to advise the jury of the burden which the state was bound to sustain before the defendant could be found guilty of negligent homicide. We certainly did not mean by quoting with approval 2 Restatement, Torts, § 500 in *Williamson v.*

*McKenna,* supra, to indicate that in a case involving the question of gross negligence no other definition of that term should be given. But we did mean that any further definition that was found to be necessary or appropriate should be in keeping with the Restatement definition.

■ We find no merit in defendant's contention that the court failed to give a requested instruction that was closely related to the above Restatement rule. It was in fact given. Neither do we find reason to be critical of the instructions as given by the trial judge upon the issue of gross negligence.

Going now to the factual problem, as is disclosed by the evidence, we will consider whether there was evidence from which a jury might be entitled to determine that the defendant was grossly negligent in the operation of his motor vehicle. The fact of the death of the persons described in the indictment, as a proximate result of the accident, is conceded.

When the accident occurred the defendant was operating his car well into the oncoming lane of travel. No visual obstruction appears to exist. He obviously became aware of the impending collision some distance prior to applying his brakes at least 49 feet before the impact but was unable to maneuver his vehicle so as to avoid the automobile occupied by the decedents. There was no obstruction on defendant's right-hand portion of the highway.

The indictment charges that defendant was guilty of gross negligence in his failure to drive on his own right-hand half of the highway, in his failure to maintain a proper lookout, and in his failure to maintain proper control over his vehicle. Defendant cites as ·error the trial court's refusal to withdraw each of these

charges, claiming that there was no evidence that in any of those particulars he was grossly negligent. The total picture does not substantiate defendant's position.

■ There was evidence from which the jury was entitled to conclude that the defendant had been drinking intoxicants prior to the accident. He told the officer who interviewed him in the hospital that he had been in Shaw's (a cocktail lounge) intermittently from 9:00 p.m. to 2:30 a.m. A witness saw him in the tavern with a glass in his hand. Another witness who saw defendant later at the restaurant testified, "I asked him where he had been drinking, and he said Shaw's."

Defendant's conduct from the time he left Newberg until he was last seen in McMinnville (some five or six miles from the scene of the accident) was that of a person devoid of normal mental acuity. The driving he was observed doing from approximately 3:30 a.m. on was highly dangerous. The jury was entitled to view the whole picture of the defendant's conduct, and the reasonably apparent causes thereof, and to therefrom draw conclusions as to whether, in any of the respects mentioned, the defendant was grossly negligent.

■ The indictment alleged that the defendant was "driving at a time when he was under the influence of intoxicating liquor * * *." Such verbiage was withdrawn from the jury's consideration. Defendant agrees that such withdrawal was proper but assigns as error the further instruction of the court which permitted the jury to take into consideration any evidence of drinking on the part of the defendant for the bearing that it might have had on his ability to maintain a proper lookout and to keep his vehicle under

control. Defendant argues that the court put intoxication back into the case after withdrawing it. We do not agree. Whether the jury could base a verdict of guilty on a finding that the defendant was under the influence of intoxicating liquor was one issue. The charge of failure to maintain proper control or a proper lookout raised separate issues. It is competent for the latter purposes for the jury to consider whether or not the defendant had been drinking. *State of Oregon v. Berrian,* 82 Or Adv Sh 791, — Or —, 414 P2d 432; *State v. Betts,* 235 Or 127, 384 P2d 198 (1963); *State v. Birch,* 183 Wash 670, 49 P2d 921.

■ Defendant's final assignment of error is in the failure of the court to sustain objections to testimony regarding the manner in which defendant drove from Newberg to McMinnville. The contention is that the previous driving was too remote in time and place to be admissible. The evidence is inconclusive as to how long defendant was in McMinnville before he started back toward Newberg. He told the police officer it was only 15 minutes. We conclude that the evidence of continual erratic driving on the trip to McMinnville was relevant. *State v. Betts,* supra; *Keefer v. Givens,* 191 Or 611, 232 P2d 808 (1951).

Since defendant makes a point of the words "conscious indifference," as used in the definition of gross negligence in ORS 30.115 (2), and the words "if he *intentionally* does an act * * *" (emphasis added), as they are used in 2 Restatement, Torts, § 500, we again call attention to our previous holdings regarding the meaning of these words. Defendant says there is no evidence that he did an intentional or conscious act that was grossly negligent. The matter has been fully covered in *Williamson v. McKenna,* supra; *Nielsen v.*

*Brown,* 232 Or 426, 374 P2d 896 (1962) ; and *Taylor v. Lawrence,* 229 Or 259, 366 P2d 735 (1961).

■ We summarize the holding of those cases by repeating that "recklessness" may be found in circumstances where defendant did not appreciate the extreme risk, but where any reasonable man would appreciate it.

The evidence in this case was properly presented to the jury for their determination of the facts. We find no reason to disturb the verdict or the judgment entered thereon.

Affirmed.