Argued July 9, affirmed September 12, 1969

# STATE OF OREGON, *Respondent, v.*
# ALLEN DUANE WEST, *Appellant.*

458 P2d 706

*Harold L. Olsen,* St. Helens, argued the cause for appellant. With him on the briefs were Bennett & Vagt, St. Helens.

*Jacob B. Tanzer,* Solicitor General, Salem, argued the cause for respondent. On the brief were Lou L. Williams, District Attorney, and Lowell W. Bergen, Deputy District Attorney, St. Helens.

FORT, J.

Defendant, following his waiver of the right to a jury trial, was tried and convicted by the court of the crime of negligent homicide. He asserts as his sole assignment of error that

> "The trial court erred in finding that excessive speed, with nothing more, was sufficient evidence upon which to find the defendant grossly negligent and, therefore, guilty of negligent homicide, under the circumstances and conditions existing immediately prior to the time of the accident."

Defendant asserts in his brief:

> "* * * The indictment alleged that the defendant drove his motor vehicle at an unreasonable speed, in a grossly negligent manner, and was, therefore, guilty of the crime of negligent homicide."

In fact, the indictment, brought under ORS 163.091, charges the defendant with operating his motor vehicle in a grossly negligent manner in five particulars: (1) violation of the basic rule, (2) failure to maintain any or proper control over his vehicle, (3) failure to maintain a proper lookout, (4) operating his car while under the influence of intoxicating liquor, and (5) failing to sound any alarm or warning to people using the roadway, thereby causing his car to

collide with a bicycle upon which the deceased, a minor girl, was riding.

Since the defendant waived trial by jury, the verdict of the court is tested here by the rule that if there is evidence to support the verdict, it is our duty to affirm. We are of the opinion that there was substantial evidence concerning each of the five matters specifically alleged in the indictment.

The trial court stated:

"* * * There is sufficient evidence of gross negligence in this case in my judgment which I believed would sustain a conviction, and I am obliged to say that in my judgment this evidence of gross negligence should be believed * * *."

The trial court did say in its oral opinion:

"* * * The thing we are primarily dealing with in this case is speed * * *."

and then commented further concerning that phase of the evidence before formally declaring the defendant guilty.

From these latter remarks, appellant erroneously contends that the trial court based its verdict on "excessive speed, with nothing more." The trial court, however, stated:

"* * * Now it's very true as defense counsel has pointed out that just the fact that somebody drives at an excessive rate of speed in and of itself does not constitute gross negligence * * *. But where as in this case speed *under the circumstances attending* is such a high rate of speed * * *." (Emphasis supplied.)

The evidence concerning speed varied from the defendant's estimate of 25 and "not over 35" to that of several witnesses ranging from 70 to 80 miles per

hour. There was evidence of the distances traveled by the car both before and after hitting a rock wall, and the distances the child and her bicycle were thrown after being struck, all of which indicated excessive speed.

From the evidence, the court could have found that the accident occurred in broad daylight shortly after 6 p.m. on May 13, 1967. The "road" in question was 8′ 6″ wide in a residential area outside of any city limit paralleling a railroad track. Homes were located on both sides of the highway and railroad track. Several young children, including the deceased, were playing in and about the roadside area following their evening meal. No sidewalks were provided along the road on either side. The indicated speed was 25 miles per hour. The accident occurred in the immediate vicinity of a curve in the road.

The defendant, who admitted he had consumed some three and one-half bottles plus two glasses of beer prior to the accident, drove his car at a speed of from 70 to 80 miles per hour along this 8′ 6″ wide "road" in a district known by him to be residential in character. As he approached the curve he swerved his car to miss three boys on bicycles identified by him as "Sorta on the right side of the road," lost control of his car, struck the deceased child without even seeing her, knocking the child off her bicycle for a distance of 113 feet across both the road and the railroad track. After striking the child, defendant drove into and caromed off a large pile of boulders and rocks, back along and across both the road and the railroad track, traveling over 100 feet further, finally coming to rest on the far rail of the parallel railroad track.

Several witnesses testified that in their opinion

defendant was under the influence of intoxicating liquor at the time of the accident.

Further evidence of defendant's frame of mind and his conscious indifference to the rights of others at and immediately after the accident was shown by his statement to the father of the deceased child at the scene that he should "go —— yourself," and his cursing of others present.

In *State v. Montieth*, 247 Or 43, 417 P2d 1012, cert. den. 386 US 780, 87 S Ct 1496, 18 L Ed 2d 526 (1967), the Supreme Court said at 48-49:

> "The case turns, therefore, upon the combined effect of the evidence of intoxication and the failure of lookout and related failure to control the defendant's automobile.
> "The jury might very well have inferred that the defendant's negligent driving, no matter how momentary it may have been, was induced by intoxication. This inference could, therefore, support a conclusion that the driver was so heedless of the rights of others that he undertook to drive while he was intoxicated. While so driving, the jury could have found, he operated his automobile negligently and thereby killed the child."

Here, in addition to the elements of lookout, control and intoxication mentioned in *State v. Montieth*, supra, there was substantial evidence of a highly dangerous rate of speed, considering both the obvious physical limitations of the road itself as well as the particular location in a residential district where the tragedy occurred, and, finally, of an "I don't care" attitude which defendant exhibited both by word and by action at the time of the accident.

In *State v. Hodgdon*, 244 Or 219, 416 P2d 647 (1966), the Supreme Court, after reviewing the recent

negligent homicide cases and reiterating its approval of the definition of the term "reckless disregard of the rights of others" set forth in 2 Restatement, Torts § 500, stated:

> "Since defendant makes a point of the words 'conscious indifference,' as used in the definition of gross negligence in ORS 30.115 (2), and the words 'if he *intentionally* does an act * * *' (emphasis added), as they are used in 2 Restatement, Torts, § 500, we again call attention to our previous holdings regarding the meaning of these words. Defendant says there is no evidence that he did an intentional or conscious act that was grossly negligent * * *.
>
> "We summarize the holding of those cases by repeating that 'recklessness' may be found in circumstances where defendant did not appreciate the extreme risk, but where any reasonable man would appreciate it." 244 Or at 227-28.

■ Thus it is not necessary for the state to prove that defendant himself knew at the time that he was grossly negligent. Here the trier of the facts could have indeed found that any reasonable man would have appreciated the extreme risk in driving in the manner and under the circumstances shown here.

The evidence overwhelmingly supports the verdict of the trial court. The assignment of error is without merit. The judgment is affirmed.