Argued July 26, affirmed in part; reversed in part; reconsideration denied November 29, petition for review denied December 11, 1979 (288 Or 173)

# STATE OF OREGON,
*Respondent,*

*v.*

# GINGER L. McLAUGHLIN,
*Appellant.*

## (No. C 78-06-10397, CA 12702)

600 P2d 474

[215]

Maxwell Donnelly, Portland, argued the cause and filed the brief for appellant.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Joseph and Roberts, Judges.

JOSEPH, J.

**JOSEPH, J.**

■ Defendant was indicted for child neglect. ORS 163.545.[1] She was convicted by a jury and appeals.[2]

Defendant and her husband were both 22 years of age; she has a tenth grade education. At the time of the alleged crime defendant had two daughters born out of wedlock, aged about six and four. Defendant and husband were married in 1976; they had a child in April, 1978, who died as a result of husband's assaulting him in June, 1978. Husband had a history of bad temper and several acts of physical violence. In October, 1977, he had spanked one of defendant's daughters with a toy broom handle because she misbehaved and refused to correct her behavior. The incident, which occurred while the husband was babysitting the two daughters, caused severe bruises on the six-year old girl's buttocks and legs. As a result of that incident the husband was charged with assault and was awaiting trial at the time of the subject incident.

On two occasions the husband had gone to the bedroom of one of the girls and had spanked her, without immediate provocation and also without injury. The evidence indicates that in the daytime before the spankings the girl had misbehaved in some ill-defined fashion. The spankings occurred in the middle of the night, and the husband disclaimed any memory of them the next day. On two occasions defendant had been struck by the husband in the course of family

---

[1] ORS 163.545:

"(1) A person having custody or control of a child under 10 years of age commits the crime of child neglect if, with criminal negligence, he leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child.

"(2) Child neglect is a Class A misdemeanor."

[2] She was also indicted for initiating a false report (ORS 162.375); that charge arose out of the defendant's having given the police a false story about the circumstances under which her husband assaulted her child. Although encompassed within the notice of appeal, no error was assigned, and the judgment will be affirmed.

arguments, and on one of those occasions she had received a black eye. Up to March, 1978, their marriage relationship had been characterized by frequent arguments, most of which arose out of his failure to have steady work. From October, 1977, to March, 1978, the husband was out of the house and living somewhere else. The wife said that after his return in March he seemed to have better control over his temper.

In January, 1978, Children's Services Division became interested in the welfare of the two daughters, and a CSD caseworker urged upon the defendant either that the husband and wife have counseling if he were to live in the home, or that he not be around the daughters. The caseworker also later warned the mother that a "high-risk situation" could exist if the daughters were around the husband and also after a new baby would come into the home. The caseworker saw the husband only once but knew the history of the family. During the March to June period the mother left the father with the daughters as a babysitter without incident and, after the baby was born, also occasionally left the baby with the father without incident. All witnesses testified that the father seemed proud of the new baby. He participated in taking care of the child.

The mother interpreted the caseworker's advice as meaning that the husband should not be living in the home. During some of the period after the birth of the child the father stayed at a friend's house, but it is apparent that he spent a great deal of time at the mother's home.

On the day of the assault the father had been in the back of the house working on an automobile. The mother asked him to load bottles in her car so they could be taken back to the store. The father thought there were not as many bottles there as there were supposed to be. An argument ensued because he did not accept either the mother's statement that all the

bottles that were supposed to be there were there or that she had not received any money from bottles which she was withholding from him. When she left the house to go to the car he was seen to have grabbed her arm or her hand several times, and he got into the car with the mother and a neighbor, who was going to the store with the mother. The argument was of a non-violent sort, and it culminated in the husband's asking, "Who's going to take care of Junior?" She said that he was going to do that and he replied, "Okay, but don't take all day." She left and was gone approximately 45 minutes.

When she returned she found the child was injured. They immediately took the child to a hospital, but he died a few days later of head injuries received from at least two blows.[3]

Defendant moved for a judgment of acquittal both at the close of the state's case and at the close of the defense.[4] Defendant argues that the statute should be construed not to apply to any situation where a parent has placed or permitted a child to be in the care of the other parent. It is unnecessary for us to determine that question, for even assuming that the statute can properly be applied in that setting, we conclude that the evidence was insufficient to submit the case to the jury.

The standard of care under the statute is defined as "criminal negligence."[5] Although the legislature has

---

[3] Father was convicted of manslaughter.

[4] The motions were different in form and content. The one made at the close of the case went to the sufficiency of the evidence, and it is the denial of that motion which we review. *State v. Gardner,* 231 Or 193, 195-196, 372 P2d 783 (1962); *State v. Henry,* 249 Or 287, 289, 437 P2d 851 (1968).

Defendant also assigns error to the court's refusal to give two requested instructions. The instructions were properly refused.

[5] ORS 161.085(10):

"(10) 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a

defined criminal negligence in words different than those used to define "gross negligence" in the case law or in the guest passenger statute (ORS 30.115; *see* Or Laws 1979, ch 866), we do not believe that the legislature intended thereby to permit a lesser quantum of proof to go to a jury in a criminal case than would be permitted in a civil case involving gross negligence. *See State v. Hodgdon,* 244 Or 219, 223, 416 P2d 647 (1966); Oregon Criminal Code, Commentary to sections 7 to 11.[6] On a motion for judgment of acquittal where criminal negligence is at issue, the trial judge has to make an evaluation of the evidence by the terms of the two statutes involved.

■ ■ The statutes describing the offense and the definition of the standard of care together required that before this charge could have been submitted to the jury there had to be evidence from which it could fairly have been found: (1) that the act of the mother in leaving the child in the care of his father while doing an ordinary family chore was done without recognition of a high degree of likelihood that he would cause an injury to the child; and (2) that the failure to recognize that likelihood was different in an extraordinary way from what others would have done in similar circumstances. Even given the husband's record of bad temper and violence toward her and one of the older children, and the warnings of the caseworker, the

substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

[6] The code makes a distinction between "recklessly" (ORS 161.085(9)) and criminal negligence (ORS 161.085(10)), but the two standards essentially encompass the same types of behavior formerly discussed as "gross negligence" in *State v. Hodgdon, supra.* The cited commentary says:

"*** To that extent this article makes somewhat less change in the law than appears at first blush. Since gross negligence in Oregon is now equated with recklessness, the only substantial change is in using a subjective test for awareness of risk, rather than an objective one. ***"

evidence was not sufficient to permit a finding that the mother failed to recognize the degree of risk to the extent that any reasonable person would have done.

The conviction for violation of ORS 162.375 is affirmed; the conviction for violation of ORS 163.545 is reversed.

**ROBERTS, J.,** dissenting.

I dissent because I believe the evidence was sufficient to present a jury question and to support the jury verdict. Although the husband had never displayed violence toward the infant, the indications noted by the majority, *i.e.,* the husband's record of violence and bad temper and the warnings of the case worker, taken together with the fact that the wife's departure was preceded by an argument, were sufficient for the jury to find the wife should have been cognizant of the danger presented by leaving the baby with the husband.