Argued and submitted October 14, 1980, reversed and
remanded February 3, reconsideration denied March 12,
petition for review denied March 31, 1981 (290 Or 727)

## CITY OF PORTLAND,
### *Appellant,*
*v.*
### STORHOLT,
### *Respondent.*

## (No. DA180396, CA 17961)

## CITY OF PORTLAND,
### *Appellant,*
*v.*
### MARSHALL,
### *Respondent.*

## (No. DA183655, CA 17960)
## (Cases consolidated)

622 P2d 764

232

James E. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Lawrence R. Young, Assistant Attorney General, Salem.

Emily Simon, Portland, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

**GILLETTE, P. J.**

In these consolidated criminal cases, we are asked to decide the constitutionality of a Portland city ordinance defining the offense of Loitering to Solicit Prostitution. The defendants were charged with violating the ordinance. They demurred to the complaints on the ground that the ordinance was unconstitutional in that it violated the Fifth and Fourteenth Amendments. The trial court agreed and dismissed the complaints. The state appeals. We reverse and remand for trial.

The ordinance in question provides:

"14.24.050. Loitering to solicit prostitution. As used in this section, 'prostitution' means an act of sexual intercourse or sodomy between two persons, not married to each other, in return for the payment of money or other valuable consideration by one of them.

"* * * * *

"(b) It is unlawful for any person to loiter in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are that the person repeatedly beckons to, stops or attempts to stop motor vehicle operators by hailing them or gesturing to them. *No arrests shall be made for a violation of this subsection unless the officer first affords the suspected person an opportunity to explain his or her conduct, and no one shall be convicted of violating this section if it appears at the trial that the explanation given was true and disclosed a lawful purpose.*" (Emphasis added).

Defendants advance several theories to support the trial judge's conclusion that the ordinance is unconstitutional. Because it will simplify our treatment of the defendants' claims, we begin our analysis by describing what, in our view, the ordinance says. This is best accomplished by dissecting the challenged portion phrase by phrase. In reading each phrase, separately and together, we do so in light of the rule that, "[w]here a statute [or ordinance] is of questionable constitutional validity, this court's obligation is to construe it, if at all possible, to save its constitutionality." *State v. Page,* 45 Or app 417, 602 P2d 1139 (1979).

> *1. "No arrest shall be made for a violation of this subsection * * *."*

█        This phrase is a limitation upon a police officer's authority. It assumes that the officer to whom it is addressed has already observed someone

> "* * * loiter[ing] in or near [a] street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution * * *."

In other words, this phrase begins a description of a qualification on an officer's otherwise existing authority to arrest on probable cause.

> *2. "* * * unless the officer first affords the suspected person an opportunity to explain his or her conduct * * *"*

This phrase directs the officer, *should he wish to make an arrest,* to grant to the individual whom he is prepared to arrest an "opportunity to explain." If the officer does not do so, *he cannot arrest.*

The purpose of this limitation on the authority to arrest is not entirely clear; neither is the on-the-street mechanism by which it is to be effectuated. The purpose *appears* to be the avoidance of an unnecessary or precipitous arrest by requiring a measure of circumspection on the part of the arresting officer. It may also be intended, in whole or in part, to forestall false arrest actions. If this latter purpose was intended, the measure may prove to be singularly ill-advised, because affording the opportunity to explain does not mean that the offender will not be arrested in any event.

Turning to the question of mechanics, how is the officer to carry out the ordinance's directive, once he has determined that he has probable cause? Does he approach the suspect and say, "I'm going to arrest you unless you have some explanation for what you've been doing?" Does he simply ask for an explanation without explaining why? Does he give *Miranda*[1] warnings? Does he describe the statutory scheme in detail? Would a failure to describe the scheme have legal significance? The case before us carries

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed2d 694 (1966).

no concrete factual situation which would aid us in answering these questions, but they all would surely arise should the ordinance be utilized and a trial on the merits ensue.

> *3. "\* \* \* and no one shall be convicted of violating this section if it appears at the trial that the explanation given was true and disclosed a lawful purpose."*

The use of the word "and" at the beginning of this phrase indicates that it is to be read in conjunction with the phrase which preceded it. Thus, we think that the ordinance contemplates that the "opportunity" shall *always* be offered, and the giving of an explanation has some significance. Just what this significance might be in the criminal context, however, escapes us. If read as doing anything other than requiring the officer to see if he's making a mistake, the clause is a constitutional nightmare. We note, to begin with, that acquittal is supposed to follow where the suspect's explanation was true and revealed "a lawful purpose." We assume that this freedom from liability would attach even if the explanation encompassed some illegal activity *other than loitering to solicit prostitution.* If this were not so, the ordinance would have substantial vagueness problems.[2]

We next focus on the words, "\* \* \* if it appears at the trial \* \* \*." Do these words make giving or failing to give an explanation *an element of the crime?* They cannot, if we are to avoid constitutional difficulties. The ordinance must be read as establishing proof of this particular fact as a special defense, complete unto itself. The prosecution thus has no right to mention defendant's silence (or defendant's explanation) in its case in chief by virtue of the language of the ordinance,[3] this matter becomes a part of

---

[2] The ordinance has previously been held by this court to be sufficiently definite to pass constitutional muster. *State ex rel Juv. Dept. v. D,* 27 Or App 861, 557 P2d 687 (1976), *rev den* 278 Or 1 (1977), *appeal dismissed,* 434 US 914 (1977). For some reason, the defendants do not here ask us to reconsider that holding, and we decline to do so *sua sponte.*

[3] What evidence the prosecution might be entitled to offer as to statements made by a properly advised defendant, apart from the language of the ordinance, is not before us.

the case, if at all, at the defendant's behest and during presentation of the defendant's case.[4]

■ We conclude that the direction to the officer to afford a suspect an opportunity to explain his or her purpose is a cautionary instruction from the city council—and one which might more commonly have been expected from the chief of police—to be circumspect in using the ordinance. Its essentially gratuitous reference to the effect which is to be given to the truth of an explanation given to a police officer is not an authorization to the prosecution to make any reference to that matter in its case in chief.

Having described the way in which we must read the language of the ordinance, we turn now to defendants' contentions. They first contend that the portion of the ordinance under discussion shifts the burden of proof as to an element of the crime, *viz.,* an explanation or lack thereof, to the defendant and, by so doing, violates the Due Process clause of the Fourteenth Amendment. Additionally, they maintain that it compels an accused to give testimony in violation of her Fifth Amendment right against self-incrimination.

■ ■ If the effect of the challenged language in the ordinance before us were to shift the burden of proof on an essential element of the crime to the defendant, there is no question that it would be unconstitutional. *See Mullaney v. Wilbur,* 421 US 684, 95 S Ct 1881, 44 L Ed 2d 508 (1975); *In Re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970). As already explained, however, and following the dictates of *State v. Page, supra,* we conclude that an explanation of defendant's behavior is not an element of the offense that a defendant must prove and, in fact, is not an "element" of the offense *at all.*

■ In order to prove that the defendant is guilty of loitering to solicit prostitution, the prosecutor must prove (1) that the defendant was loitering in or near a street or public place, and (2) that the defendant's manner and circumstances manifested the purpose of inducing, enticing, soliciting or procuring another to commit an act of

---

[4] The ordinance cannot be read as providing that the "true explanation" defense is the only one available to a defendant; any other theory, from failure of the prosecution's proof to alibi, is still available.

prostitution. The defendant is not required to prove intent, or lack thereof, or that he or she was engaged in a lawful activity. Of course, if the defendant chooses to testify and his or her testimony discloses a lawful purpose, the testimony would provide a defense for the jury's consideration.

The defendant cites to us a number of cases in which the failure to give a satisfactory explanation or a good account of one's conduct has been found to be an element of the crime. In *Palmer v. Euclid,* 402 US 544, 91 S Ct 1563, 29 L Ed 2d 98 (1971), the statute under scrutiny provided:

> "Any person who wanders about the streets or other public ways or who is found abroad at late or unusual hours in the night without any visible or lawful business and who does not give satisfactory account of himself [is guilty of violating the suspicious person ordinance]."

*See also People v. Berck,* 32 NY2d 567, 347 NYS2d 33, 300 NE2d 411 *cert den,* 414 US 1093 (1973). And in *Benton v. United States,* 232 F2d 341 (DC Cir 1956), the questioned statute stated:

> "No person shall have in his possession in the District any instrument, tool, or other implement for picking locks or pockets, or that is usually employed, or reasonably may be employed in the commission of any crime, if he is unable satisfactorily to account for the possession of the implement."

*See also State v. Nales,* 28 Conn Sup 28, 248 A2d 242 (1968); and *City of Chicago v. Mulkey et al,* 44 Ill 2d 558, 257 NE2d 1 (1970). All these cases and the statutes which they construe are distinguishable from the case before us. The lack of an explanation was specifically made a part of the crime itself in those cases, whereas in this case, as we here hold, it is not an element of the crime of loitering for purposes of soliciting prostitution. *Accord, City of Seattle v. Jones,* 3 Wash App 431, 438, 475 P2d 790, *aff'd* 79 Wash 2d 626, 488 P2d 750 (1971).

■ We turn now to the defendants' Fifth Amendment claim. They maintain that, because their explanations, or lack thereof, are an element of the crime, they are compelled to give testimony or else fail to carry their burden of proving a lawful excuse for her conduct. We have already

concluded that the defendants' explanations are not an element of the crime; therefore, they are under no compulsion to testify.

We hold that a defendant's explanation or the lack thereof is not an element of the offense of loitering to solicit prostitution as defined in the Portland ordinance. The defendants' demurrers were improperly sustained. The orders of the trial court dismissing the complaints are reversed, and the cases are remanded for trial.

Reversed and remanded.