Argued and submitted March 16, reversed and remanded
for trial June 15, reconsideration denied July 23,
petition for review denied September 22, 1981 (291 Or 662)

# STATE OF OREGON,
## *Appellant,*

### *v.*

# BRENDA JOYCE MILLS,
## *Respondent.*

## (No. DA 161625-7812, CA 19395)

629 P2d 861

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were James M. Brown, former Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Merrill Schneider, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

■ Defendant was charged with three counts of child neglect. ORS 163.545. The trial court granted her demurrer and dismissed the case on the ground that the child neglect statute is unconstitutionally vague. The state appeals. We reverse and remand for trial.

ORS 163.545 reads as follows:

"(1) A person having custody or control of a child under ten years of age commits the crime of child neglect, if, with criminal negligence, he leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child."

Defendant's demurrer specifically made the objection that the statutory language "* * * in or at any place for such a period of time as may be likely to endanger the health or welfare of such child" fails to inform a potential defendant of the conduct it proscribes and fails to provide a sufficient standard for the judge and jury in determination of guilt. On appeal, defendant's argument centers principally on the "with criminal negligence" portion of the statute, and there is no specific challenge to any other statutory language. In construing the statute we consider it as a whole, with a view to effecting the overall policy it intends to promote, rather than dissecting individual phrases. *Wimer v. Miller,* 235 Or 24, 383 P2d 1005 (1963); *State v. Brandon,* 35 Or App 661, 582 P2d 52, *rev den* (1978). *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969), defines the standard for specificity in criminal statutes:

"* * * the terms of a penal statute creating an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. [Citations omitted.] * * * A law that permits the judge and jury to punish or withhold punishment in their uncontrolled discretion is defective as much for its uncertainty of adjudication as for its failure to notify potential defendants of its scope and reach." 254 Or at 27.

*See also, City of Portland v. Arndorfer,* 44 Or App 37, 604 P2d 1279 (1980); and *see Grayned v. City of Rockford,* 408 US 104, 92 S Ct 2294, 33 L Ed 2d 222 (1972); *Bouie v. City of Columbia,* 378 US 347, 84 S Ct 1697, 12 L Ed 2d 894 (1964);

*Connally v. General Construction Co.,* 269 US 385, 46 S Ct 126, 70 L Ed 322 (1926).

■      At the outset we note the familiar rule that in construing a statute, we have a duty to construe it to save its constitutionality, if at all possible. *State v. Crane,* 46 Or App 547, 612 P2d 735, *rev den* (1980); *City of Portland v. Storholt,* 50 Or App 231, 622 P2d 764, *rev den* (1980). To achieve this end it is proper to look to legislative history to determine if the general words of the statute can be limited in their application to affect only the conduct the legislature intended to suppress. *State v. Crane, supra,* 46 Or App at 554. The 1971 Commentary of the Criminal Law Revision Commission is of little help, since it provides an explanation for every part of the statute *except* the part defendant challenges by her demurrer.[1]

We are not, however, left entirely without guidance in this area. While what acts are likely to endanger the health or welfare of a child are not spelled out in the

---

[1] The commentary states, in part, as follows:

"Section 174 is intended to complement the sections on child abandonment and criminal nonsupport by providing coverage for situations involving criminal neglect. The crucial issue here is not whether the child was deserted or left without nominal support, but whether it was left unattended under circumstances likely to endanger its health or welfare.

"The term 'custody or control of a child' extends the reach of the section beyond the child's parents or guardian; it includes the temporary custodian, e.g., babysitter, relative, teacher.

"* * * * *

"The *mens rea* element of criminal negligence is defined in § 7 of the Code to mean 'that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstances exist. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

"* * * * *

"The term 'unattended' means that the child is left under circumstances in which no responsible person is present to attend to his needs. Leaving a three month old child in the care of a nine year old child might, in some cases, amount to child neglect. An alleged offense under this section must be viewed as a totality of circumstances; the age of the child, place where left, whether it was left alone or in the company of others, period of time left and, finally, whether the sum of these circumstances are [sic] such as would endanger the health or welfare of the child." Proposed Oregon Criminal Code, 159, Commentary § 174 (1972).

commentary to the child neglect statute, this is not the first time that Oregon courts have considered a constitutional challenge to language of this type. In *State v. McMaster,* 259 Or 291, 486 P2d 567 (1971), the Supreme Court considered the constitutionality of the termination of parental rights statute, ORS 419.523(2)(a), which provided for termination if the court found the parent or parents "unfit by reason of conduct or condition seriously detrimental to the child * * *." While emphasizing the difference between a juvenile court proceeding and one under the criminal code, the court cited two decisions by the U. S. Supreme Court in criminal cases for the standard to be used in determining constitutionality:

> "Even in cases involving criminal statutes an important consideration is whether the statute is as explicit as the legislature can draw and accomplish the purpose it intends. *United States v. Petrillo,* 332 U S 1, 67 S Ct 1538, 91 L Ed 1877, 1882 (1946); 62 Harv. L Rev 76, 82-83 (1948). Mr. Justice Frankfurter, dissenting in *Winters v. New York,* 333 U S 507, 524-525, 68 S Ct 665, 674, 92 L Ed 840 (1948), commented:
>
>> " '* * * But whether notice is or is not 'fair' depends upon the subject matter to which it relates. Unlike the abstract stuff of mathematics, or the quantitatively ascertainable elements of much of natural science, legislation is greatly concerned with the multiform psychological complexities of individual and social conduct. Accordingly, the demands upon legislation, and its responses, are variable and multiform.' " 259 Or at 298.

In *McMaster,* the court went on to say that "in order to accomplish its primary purpose of caring for the welfare of the child, the legislature would have extreme difficulty being more specific." 259 Or at 298-99. Following this observation, it found the words of the termination statute were sufficiently explicit, interpreting "seriously detrimental" to mean "conduct detrimental to any major aspect of the child." 259 Or at 299.

■ Other courts have found similar language adequate to inform those subject to it of the kind of behavior which will render them liable to criminal sanctions.[2] *See*

---

[2] *McMaster,* while making a distinction between the flexibility of juvenile versus criminal proceedings, noted that in terminations of parental rights

*People v. Ewing,* 72 Cal App 3d 714, 140 Cal Rptr 299 (1977); *People v. Harris,* 239 Cal App 2d 393, 48 Cal Rptr 677 (1966); *People v. Beaugez,* 232 Cal App 2d 650, 43 Cal Rptr 28 (1965) (upholding a statute punishing "whoever, having the care or custody of any child, * * * wilfully causes or permits such child to be placed in such situation that its person or health may be endangered, * * *"); *Hunter v. State,* 172 Ind App 397, 360 NE 2d 588, *cert denied* 434 US 906 (1977) ("cruelty to a child shall consist of * * * exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child"); *State v. Sammons,* 58 Ohio St 2d 460, 391 NE2d 713 (1979) ("no person, being the parent * * * of a child under eighteen * * * shall create a substantial risk to the health or safety of such child, by violating a duty of care, protection or support * * *"). A California court noted: "[T]he type of conduct which this portion of the statute seeks to reach defies precise definition. In number and kind the situations where a child's life or health may be imperiled are infinite." *People v. Beaugez, supra,* 43 Cal Rptr at 32. The Indiana court reasoned: "[T]he statute need only inform the individual of the generally proscribed conduct, it need not list with itemized exactitude each item of conduct prohibited." *Hunter v. State, supra,* 360 NE2d at 595. *Compare State v. McMasters, supra:* "[W]e would hope that in the case of the McMasters, or any parents, there is no need for an explicit statute to 'spell out' how poorly they can treat their child before risking loss of their parental rights." 259 Or at 299.[3]

"[a]dmittedly, a serious interest of the parents is in issue which can be assumed to be as important to the parents as their freedom, which is in jeopardy in a criminal proceeding." 259 Or at 295. The Iowa Supreme Court has held that termination is "of such a grave nature" that standards for vagueness in criminal legislation should be the test for termination statutes. *In Interest of Lewis,* 257 NW2d 505, 510 (Iowa 1977).

[3] The legislature need not define an offense with such exactitude that a person could determine in advance whether specific conduct in all possible circumstances could be found to be an offense. *State v. Williams,* 37 Or App 419, 422-23, 587 P2d 1049 (1978); *State v. Samter,* 4 Or App 349, 352, 479 P2d 237 (1971). *See Jordan v. DeGeorge,* 341 US 223, 231, 71 S Ct 703, 95 L Ed 886 (1951):

"We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. *United States v. Wurzbach,* 280 US 396, 399, 50 S Ct 167, 74 L Ed 508 (1930). Impossible standards of specificity are not required. *United*

In order to violate ORS 163.545, one must act with criminal negligence. "Criminal negligence" is defined at ORS 161.085(10) as a situation in which

"* * * a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."[4]

■ ■ We conclude, on the basis of the statutory language of ORS 161.085(10) and ORS 163.545, and the interpretation of similar language by our own courts and courts of other states, that the Oregon statute forbids only that conduct by those having custody of a child under the age of ten years which, by the location and period of time for which a child is left unattended, constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation.[5] Recognizing the impossibility of detailing in advance all of the ways in which an unattended child may be potentially harmed, we hold that ORS 163.545 provides fair notice of the conduct it forbids and proscribes only conduct which is a gross deviation from the normal standard of care.

The overall policy the legislature intended to promote is, as noted by the California court in *People v. Beaugez, supra,* "a salutary social one." 43 Cal Rptr at 32. All 50 states include, in their criminal or juvenile codes or both, statutes dealing with the problem of child neglect. *See*

---

*States v. Petrillo,* 332 US 1, 67 S Ct 1538, 91 L Ed 1877 (1947). * * *" (Cited in *Bowers v. State,* 38 Md App 2, 379 A2d 748, 750 (1977) finding 'cruel and inhuman treatment' language in Maryland criminal child abuse statute not vague.)"

[4] *Cf. State v. Winters,* 346 So2d 991 (Fla 1977), holding unconstitutional a child neglect statute imposing criminal penalties for acts of simple negligence.

[5] This is in keeping with the facts of the two cases involving ORS 163.545 which have reached this court previously. *See State v. McLaughlin,* 42 Or App 215, 220, 600 P2d 474, *rev den* (1979) (child neglect conviction reversed where mother's actions in leaving infant alone with father, who had history of violence toward mother and her daughters, following a spousal disagreement, was found not to be "different in an extraordinary way from what others would have done in similar circumstances"); *State v. Rosen,* 38 Or App 107, 589 P2d 1132 (1979) (conviction for child neglect where three-month-old girl died as a result of being left alone overnight in a car, while mother went drinking at nearby tavern and spent the night on board a boat).

*State v. Ballard,* 341 So2d 957, 962 (Ala Crim App 1976); and *see* Note, *Constitutional Limitations on the Scope of State Child Neglect Statutes,* 79 Colum L Rev 719 (1979).[6] Most of these statutes have wording similar to that of Oregon's law, yet of the five successful constitutional challenges, only two have been for vagueness of the face of the statute.[7]

The Oregon child neglect statute, ORS 163.545, is constitutional. The demurrer was improperly sustained. The order of the trial court dismissing the complaint is reversed and the case is remanded for trial.

Reversed and remanded for trial.

---

[6] For cases upholding the constitutionality of various termination of parental rights statutes against challenges for vagueness, *see Matter of J.F.C.,* 577 P2d 1300 (Okla 1978) (court may terminate when a parent "who is entitled to custody * * * has failed to give the child the parental care or protection necessary for his physical or mental health * * *" and has failed to correct the condition); *In Re William L.,* 477 Pa 322, 383 A2d 1228, *cert denied* 439 US 880 (1978) (termination when "repeated and continued incapacity, abuse, neglect * * * of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and * * * cannot or will not be remedied by the parent"); *People In Interest of D.K.,* 245 NW2d 644 (S. D. 1976) (when child "lacks proper parental care through the actions or omissions of the parent, guardian, or custodian; whose environment is injurious to his welfare; whose parent, guardian, or custodian fails or refuses to provide proper or necessary subsistence, education, medical care or any other care necessary for his health, guidance or well-being * * *").

[7] In addition to *State v. Winters, supra,* at n. 4, we have located only four other cases upholding a challenge to the constitutionality of a child neglect statute: *Roe v. Conn,* 417 F. Supp. 769 (D Ala 1976); *Alsager v. District Court of Polk Cty., Iowa,* 406 F Supp 10 (D Iowa 1975); *In Interest of Crooks,* 262 NW2d 786 (Iowa 1978); and *State v. Ballard, supra.* In *Crooks* the statute, which had been repealed, was vague as applied; in *Ballard* the constitutional problem was, at least partially, that while the title of the child abuse statute made wilfulness an element of the offense, the body of the statute did not.

The Alabama termination of parental rights statute struck down in *Roe* allowed removal of a child under 16 who "has no proper parental care or guardianship or whose home, by reason of neglect, cruelty, or depravity, on the part of his parent or parents, guardians or other person in whose care he may be, is an unfit or improper place for such child." Ala Code, tit. 13, § 350(2) (1958). The court found "unfit or improper" not to "be terms of common meaning." 417 F Supp at 780. The Iowa termination statute challenged in *Alsager* allowed termination for failure to provide "necessary parental care and protection" or for "[parental] conduct * * * detrimental to the physical or mental health or morals of the child." Iowa Code § 232.41(2) (1971). The federal court found this language "susceptible of multifarious interpretations." 406 F Supp at 18. Because of the limiting words of ORS 163.545, establishing a *mens rea* of criminal negligence, our statute is significantly more detailed than either of the last two.