**Randolph Eugene KESER,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 84–198.

Supreme Court of Wyoming.

Sept. 13, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, and K. Leslie Delk, Asst. Public Defender, Wyoming Public Defender Program, for appellant; oral argument by Martin J. McClain.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Michael A. Blonigen, Asst. Atty. Gen., for appellee; oral argument by Michael A. Blonigen.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN, and CARDINE, JJ.

CARDINE, Justice.

This appeal is from a criminal conviction for child abuse. Appellant was sentenced to a term of not less than one nor more than two years in the Wyoming State Penitentiary; the sentence was suspended and appellant ordered to serve six months in the Natrona County jail with a subsequent supervised probation of one year. We affirm.

Appellant raises a single issue:

"Whether Section 6–2–503 W.S. 1977, June 1983 Replacement, as written by the legislature, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

In essence it is claimed that the statute is violative of due process in that (1) it is so vague that one cannot know what conduct constitutes child abuse, and (2) it does not contain a provision excepting from child abuse reasonable parental discipline. The State raises an additional issue of whether appellant has standing to raise the latter issue since he is a stepfather rather than a parent.

Appellant, Randy Keser, is the stepfather of fourteen-year-old Kevin Padilla. During December 1983, Kevin's mother was visiting relatives in Honduras. Appellant had made arrangements for Kevin to stay with neighbors while he was out of town on business. When appellant returned, he discovered that Kevin had taken the bus to school but had not arrived and that he had been absent from his classes. Appellant called the neighbors around 10:30 p.m. to see if Kevin had been found and discovered that they had picked him up around 8:30 p.m. When appellant sought to take Kevin home, he refused to leave. Appellant called the sheriff's office, then called Kevin, and advised him that the sheriff's office required that he return home with him. Appellant drove to the neighbors; Kevin entered the car, and they started traveling to appellant's house.

Kevin testified that while they were in the car his stepfather hit him three or four times with a metal spatula used to scrape ice off the window, backhanded him on the

mouth, called him names, and threatened to kill him. After they arrived home, he was hit on his bare bottom and thighs with a leather belt fourteen or fifteen times as hard as appellant could hit, four or five times on the face, and at least once on the arm.

Appellant conceded that Kevin was disciplined. He testified, however, that Kevin was hit with the window scraper only twice and that it was not metal but a flat piece of plastic; that Kevin preferred the belt to having his privileges withdrawn, and that he only hit Kevin with the belt four to six times; that he was afraid Kevin would run away; that he suspected an involvement with drugs and sex; and that he was worried about Kevin's school work.

The morning after Kevin was "disciplined," he saw the school nurse who reported the incident to the Department of Public Assistance and Social Services. Kevin was examined by an emergency room physician who later testified to the existence of bruises on Kevin's face and posterior. Subsequently charges were brought against appellant for child abuse. At the beginning of the trial, appellant's attorney moved for a dismissal of the case contending that the child abuse statute with which he was charged was unconstitutional. At the end of the State's case, the court ruled the statute constitutional.

The statute in question, § 6–2–503, W.S. 1977, reads as follows:

"Except under circumstances constituting a violation of W.S. 6–2–502, *any adult who intentionally* or in reckless disregard of the consequences *causes physical injury or mental trauma to a child under the age of sixteen (16) years* * * * is guilty of child abuse * * *." (Emphasis added.)

## STANDING

 The State contends that appellant, because of a lack of parental relationship, does not have standing to contest the constitutionality of the statute. The importance of the family is firmly entrenched in American law. *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Cleveland Board of Education v. Lafleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Prince v. Commonwealth of Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). We have frequently extolled the importance of the family group and the joys and corresponding responsibilities involved in living with and bringing up children. See, *DS v. Department of Public Assistance and Social Services,* Wyo., 607 P.2d 911 (1980). A biological relationship is not the exclusive determination in finding an existence of family. *Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). This child's family consisted of his mother and stepfather. He was residing with them. The child had been left by his mother in the care and custody of appellant. In this circumstance, appellant has standing to raise the question of the constitutionality of the statute. See, *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Quilloin v. Walcott,* supra. The State further contends that appellant lacks standing because his conduct was outside the scope of parental discipline. "A party has standing to challenge the constitutionality of a statute only so far as it has an adverse impact on his own rights." *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). See also, *Armijo v. State,* Wyo., 678 P.2d 864, 868 (1984). Although we abhor cruelty to children, we do not find appellant's version of the incident to be so totally outside the ambit of discipline as to foreclose his right to raise these questions.

## VOID FOR VAGUENESS

The applicable constitutional standards are not disputed by the parties.

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no

man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

"On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise. [Citations.] And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction." *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). See also, *Armijo v. State*, supra, and *Dover v. State*, Wyo., 664 P.2d 536 (1983).

■ An ordinance or statute is void for vagueness if it fails to give a person of ordinary sensibility fair notice that the contemplated conduct is forbidden. Part of the rationale for this rule is that vagueness encourages arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Wyoming has followed the constitutional guideline that a criminal statute violates an essential principle of due process if

"[m]en must necessarily guess at its meaning and differ as to its application." *Sanchez v. State*, Wyo., 567 P.2d 270, 274 (1977). See also, *State v. Laude*, Wyo., 654 P.2d 1223, 1228 (1982).

We have previously defined the principles of due process.

"In approaching a problem involving a decision which is concerned with whether a statute is constitutional or not, we do so with certain well-established rules in mind. The law in this regard was sum-marized in *State v. Stern*, Wyo., 526 P.2d 344, 346–347, when we said that in determining the constitutionality of a statute, " ' * * * the plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary, [citation]; that where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not properly look for and impose another meaning, [citation]; that where legislative intent is discernible a court should give effect to that intent, [citation]; that every law must be presumed to be constitutional, with all reasonable doubt resolved in its favor, [citation]; and that while generally speaking penal statutes are to be strictly construed, they need not be given overnarrow meaning in disregard of the obvious purpose of the legislative body, [citation].'

"Since no other states have statutory provisions similar to ours, we must determine the constitutionality of this section on the basis of the general requirements of due process." (Footnote omitted.) *Sanchez v. State*, supra at 274 (1977).

■ Appellant contends that the phrases "physical injury" and "mental trauma" contained in the child abuse statute are vague and not defined in the statute. We have not hesitated to declare child protection statutes unconstitutional because the language was vague and indefinite. *State v. Gallegos*, Wyo., 384 P.2d 967 (1963). A statute, however, is not considered vague to the extent of being unconstitutional merely because a reviewing court believes the statute could have been drafted with greater precision.[1] *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979).

---

**1.** The statute governing child abuse, § 6–2–503, W.S.1977, as amended subsequent to this incident, defines mental trauma and physical injury:

"(a) Except under circumstances constituting a violation of W.S. 6–2–502, a person is guilty of child abuse, a felony punishable by imprisonment for not more than five (5) years, if:
"(i) The actor is an adult or is at least six (6) years older than the victim; and

"(ii) The actor intentionally or recklessly inflicts upon a child under the age of sixteen (16) years:
"(A) Physical injury as defined in W.S. 14–3–202(a)(ii)(B); or
"(B) Mental injury as defined in W.S. 14–3–202(a)(ii)(A)."

Section 14–3–202(a)(ii)(A) and (B), W.S.1977, provides:

"[W]ords of common usage should be given their usual, ordinary and natural meaning, or signification, according to approved usage, unless there is some indication to the contrary in the statute itself." (Footnotes omitted.) Crawford, The Construction of Statutes, § 186 (1940).

The statute, § 6–2–503, W.S.1977, is concerned with abuse. It is not fatal to the statute that child abuse is defined in general terms. Abuse is something other than normal parental action. *State v. Coe*, 92 N.M. 320, 587 P.2d 973 (1978). Criminal statutes should be as explicit as is possible and still accomplish their intended goals. *United States v. Petrillo*, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).

"The relationship between parents or guardians and children is a delicate and complex one, and standards designed to regulate this relationship must necessarily provide some flexibility while at the same time effectuating the state policy of protecting children from abuse." *People v. Jennings*, Colo., 641 P.2d 276, 280 (1982).

In upholding the constitutionality of child neglect statutes, it has been stated:

"Other courts have found similar language adequate to inform those subject to it of the kind of behavior which will render them liable to criminal sanctions. See *People v. Ewing*, 72 Cal.App.3d 714, 140 Cal.Rptr. 299 (1977); *People v. Harris*, 239 Cal.App.2d 393, 48 Cal.Rptr. 677 (1966); *People v. Beaugez*, 232 Cal. App.2d 650, 43 Cal.Rptr. 28 (1965) (upholding a statute punishing 'whoever, having the care of custody of any child,

* * * wilfully causes or permits such child to be placed in such situation that its person or health may be endangered, * * * '); *Hunter v. State*, 172 Ind.App. 397, 360 N.E.2d 588, cert. denied 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193 (1977) ('cruelty to a child shall consist of * * * exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child'); *State v. Sammons*, 58 Ohio St.2d 460, 391 N.E.2d 713 (1979) ('no person, being the parent * * * of a child under eighteen * * * shall create a substantial risk to the health or safety of such child, by violating a duty of care, protection or support * * * '). A California court noted: '[T]he type of conduct which this portion of the statute seeks to reach defies precise definition. In number and kind the situations where a child's life or health may be imperiled are infinite.' *People v. Beaugez*, supra, 43 Cal.Rptr. at 32. The Indiana court reasoned: '[T]he statute need only inform the individual of the generally proscribed conduct, it need not list with itemized exactitude each item of conduct prohibited.' *Hunter v. State*, supra, 360 N.E.2d at 595. Compare *State v. McMasters*, supra: '[W]e would hope that in the case of the McMasters, or any parents, there is no need for an explicit statute to "spell out" how poorly they can treat their child before risking loss of their parental rights.' 259 Or. at 299, 486 P.2d 567." (Footnotes omitted.) *State v. Mills*, 52 Or.App. 777, 629 P.2d 861, 863–864 (1981).

"(a) As used in W.S. 14–3–201 through 14–3–215:

* * * * * *

"(ii) 'Abuse' means inflicting or causing physical or mental injury, harm or imminent danger to the physical or mental health or welfare of a child other than by accidental means, including abandonment, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and the commission or allowing the commission of a sexual offense against a child as defined by law:

"(A) 'Mental injury' means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in his ability to function within a normal range of performance and behavior with due regard to his culture;

"(B) 'Physical injury' means death or any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition."

Florida has upheld statutory language making it a crime to knowingly or with culpable negligence permit physical or mental injury stating that the language is simpler, more straight forward and more readily understood by a man of common intelligence than the previous statutory language. *State v. Riker,* Fla., 376 So.2d 862 (1979). Willful abuse and torture were not considered vague and indefinite in *Chambers v. State,* Ala.Cr.App., 364 So.2d 416 (1978). "Cruelly and unlawfully punishes" was not considered unconstitutionally broad or impermissibly vague in *People v. Jackson,* 140 Mich.App. 283, 364 N.W.2d 310 (1985). The distinctions made in that statute between lawful discipline and unlawful punishment did not give such unfettered discretion to the jury or judge as to render the statute void for vagueness. *People v. Shelton,* 138 Mich.App. 510, 360 N.W.2d 234 (1984). California held that the phrases "unjustifiable physical pain or mental suffering" and "cruel or inhumane corporal punishment or injury resulting in a traumatic condition" were not so uncertain as to be invalid. This language provides notice of the proscribed activities as well as guidance to the courts. *People v. Smith,* 35 Cal.3d 798, 201 Cal.Rptr. 311, 678 P.2d 886 (1984).

These statutes are basically protective in nature. Consequently, they are designed to cover a broad spectrum of conduct. There is an infinite variety of conduct which may be involved in order to safeguard the welfare of the children. The statutes must be broadly drawn and reasonably definite in the area of legislation involved so that an ordinary person would know the conduct proscribed. *Commonwealth v. Marlin,* 452 Penn. 380, 305 A.2d 14 (1973).

In this case, the statute, § 6–2–503, supra, provides that child abuse is the causing of physical injury or mental trauma intentionally or in reckless disregard of the consequences. "Physical injury" has been defined by Black's Law Dictionary (5th ed. 1979) as "[b]odily harm or hurt * * *"; "mental" has been defined as "[r]elating to or existing in the mind; intellectual, emo-

tional, or psychic, as distinguished from bodily or physical," Id.; and "trauma" is defined as a " * * * psychologically damaging emotional experience," Id. We do not find these phrases to have such esoteric meanings as to be unintelligible.

■ Physical injury is harm to the body. It is a term of common usage generally understood by the average person. It includes the bruises and welts and trauma of the kind suffered by the victim in this case. "Mental trauma" is harm to the mind or spirit. It is also a commonly understood term. The statute is violated upon the occurrence of physical injury and mental trauma—what society would consider child abuse. Appellant here should have known that his conduct was violative of the statute; and, if the definition of child abuse is not as precise as he would like it, that, in itself, does not render the statute unconstitutional. The right to have children does not include a corresponding right to abuse them by omission or commission. *People in Interest of CL,* S.D., 356 N.W.2d 476 (1984). Children need protection. This statute accomplishes that purpose and is sufficiently definite to satisfy constitutional requirements.

## PARENTAL DISCIPLINE

Appellant contends that this statute fails to separate discipline from child abuse and, since it does not make a provision for recognizing and honoring fundamental rights of a parent to discipline his child, it is unconstitutional. Appellant contends that the judge's instruction referring to reasonable parental discipline being an affirmative defense did not cure the unconstitutionality of the statute, stating that requiring a parent to prove that

" * * * the force used was reasonable and appropriate increases the risk of an erroneous deprivation of a fundamental right and violates due process."

The State concedes that parents have a right to raise and reasonably discipline their children as they see fit, arguing however that no adult has a protected right to

severely beat or abuse a child. The child abuse statute, together with the common-law defenses available to one charged, are complete and fairly apprise one of prohibited acts and conduct. We do not easily impute "to the legislature an intention to include innocent acts as criminal felonies." *Nimmo v. State,* Wyo., 603 P.2d 386, 390 (1979).

Section 6-1-102, W.S.1977, abolishes common-law crimes but retains common-law defenses. Many defenses to criminal actions are not specifically contained within the specific criminal statute.

"Possible bars to conviction include alcoholism, alibi, amnesia, authority to maintain order and safety, brainwashing, chromosomal abnormality, consent, convulsion, custodial authority, defense of habitation, defense of others, defense of property, de minimis infraction, diplomatic immunity, domestic (or special) responsibility, double jeopardy, duress, entrapment, executive immunity, extreme emotional disturbance, hypnotism, immaturity, impaired consciousness, impossibility, incompetency, insanity, intoxication (voluntary and involuntary), involuntary act defenses, judicial authority, judicial immunity, justification, law enforcement authority, legislative immunity, lesser evils, medical authority, mental illness (apart from insanity), military orders (lawful and unlawful), mistake (of law and fact), necessity, official misstatement of law, parental authority, plea bargained immunity, provocation, public duty or authority, reflex action, renunciation, self-defense, somnambulism, the spousal defense to sexual assaults and theft, statute of limitations, subnormality, testimonial immunity, the unavailable law defense, unconsciousness, and withdrawal." 1 Robinson, Criminal Law Defenses, p. 70, fn. 1 (1984).

Some of these defenses are statutory but many are common-law defenses. Some are not recognized in Wyoming. The question to be answered is whether we recognize the parental-authority defense.

Over half of American jurisdictions have a parental-authority-justification defense either by statute or common law. The defense arises from the necessity of parental or benevolent custodial authority and has been defined as:

*"Parental and Benevolent Custodial Authority.* Conduct constituting an offense is justified if:

"(1)(a) the actor is a parent, guardian, or other person similarly responsible for the general welfare of a minor or incompetent, or is acting with the specific authorization of such parent, guardian, or other person similarly responsible; and

"(b) there arises a need for conduct to promote or safeguard the welfare of the minor or incompetent, including the prevention or punishment of misconduct; and

"(2) consistent with his authority, the actor engages in conduct, constituting the offense,

"(a) when and to the extent necessary to promote or safeguard the welfare of the minor or incompetent,

"(b) that is reasonable in relation to the gravity of the harm or evil threatened and the importance of the interest to be furthered." 2 Robinson, Criminal Law Defenses § 144(a) (1984).

It is further stated that:

"The burden of production for the defense of parental or benevolent custodial authority is always on the defendant. The burden of persuasion is nearly always on the state, beyond a reasonable doubt." (Footnotes omitted.) Id. at p. 162.

Wyoming has previously addressed the question of parental authority, stating:

"Courts are agreed that since parents, or those standing in their place, are charged with the duty of educating their children and bringing them up in accordance with certain standards, they have the right to exercise such control and restraint and to adopt such disciplinary measures as will enable them to discharge their parental duty; that accordingly it is not an assault and battery for a parent, or one

standing in such place, to strike a child in punishment for disobedience or other misconduct, but is in the exercise of a legal right in doing so. 2 R.C.L. 541. Courts are not agreed as to the extent of punishment. In 2 R.C.L. 542, the rule is stated as follows:

" 'The decided preponderance of authority, however, is that a parent in punishing his children must act in good faith with parental affection, must not exceed the bounds of moderation, and must not be cruel or merciless, and that any act of punishment in excess of such limits is unlawful. * * * Whether in any case punishment exceeded the bounds referred to is a question of fact for the jury, and they may determine it from the injuries inflicted.' " *State v. Spiegel*, 39 Wyo. 309, 270 P. 1064, 64 A.L.R. 289 (1928).

██ It is well established that the legislature enacts existing statutes with knowledge of pre-existing statutes and common law. Common-law defenses do not necessarily have to be set forth within the applicable statutes. *Civic Ass'n of Wyoming v. Railway Motor Fuels*, 57 Wyo. 213, 116 P.2d 236 (1941). We are not prepared to state that the legislature was unaware of *State v. Spiegel*, supra. The child abuse statute, § 6–2–503, supra, when considered in light of the common-law defense of parental discipline available and here accorded to appellant, was sufficiently clear to apprise appellant of the prohibited conduct and is, therefore, constitutional.

## INSTRUCTIONS

██ Appellant contends, however, that the parental discipline instruction to the jury augmented the statute in an unconstitutional manner; that this judicial amendment was within the province of the legislature and not the courts. The court instructed the jury upon the affirmative defense of reasonable and appropriate discipline as follows:

"You are instructed that the use of reasonable and appropriate physical force is an affirmative defense to the crime of child abuse when it is employed by one entrusted with care of the child for the purpose of maintaining discipline."

The prosecuting attorney read that instruction to the jury in closing argument and then stated:

"Again I don't see how any of us can disagree with that. That is our parental right to do that. We have to discipline children sometimes, and I would focus your attention primarily on the use of reasonable and appropriate physical force. Is it reasonable to be scarred for life? To be hit in the face? Is that appropriate to be bruised and bleeding, to not be able to sleep that night from the pain, to hide from your own stepfather a week afterward? Not at all, not at all."

The defense attorney reiterated this concept in his closing argument stating:

"As I told you at the beginning of this whole thing, it all boils down to reasonableness and justified actions. You have been instructed by the Judge [in] Instruction Number 6. The prosecution must show beyond a reasonable doubt that the discipline which Randy gave his son was not reasonable, was not justifiable. We again submit to you that this has not been shown."

All parties recognized the applicability of reasonable parental discipline; the defense was based upon the theory that although Kevin had been hit with an ice scraper and a belt, appellant's actions constituted justifiable discipline rather than abuse. The jury was advised that reasonable parental discipline was a defense. Appellant took the stand and testified that he beat Kevin and that he had also been beaten as a child. He testified to his concerns about Kevin's behavior, attitude and school work. The jury did not accept this action as reasonable. The defense asserted that the conduct charged was appropriate parental discipline. The trial court properly instructed the jury upon this defense, and the instruction given was a correct statement of the law.

Looking at the statute on child abuse and being mindful of the constitutional requirements and the applicable rules of statutory construction, we cannot find this statute unconstitutional. The statutory prohibition of child abuse encompasses a very difficult and nebulous area; it is not an easy task to clearly distinguish child abuse from parental punishment. This statute, in conjunction with the common-law defense of justifiable parental discipline, is adequate to apprise one of the unlawfulness of abusing children; and of the acts to be avoided. The legislature has coped with this problem in a reasonable way.

The judgment from which this appeal is taken is, therefore, affirmed.