Argued and submitted September 14, 1987, affirmed February 24, Damofle's reconsideration and Quintana's reconsideration denied April 22, both petitions for review denied May 17, 1988 (305 Or 671)

# STATE OF OREGON,
*Respondent,*

*v.*

# LYNNE DAMOFLE,
*Appellant.*

(CR86-03127; CA A43818 (Control))

# STATE OF OREGON,
*Respondent,*

*v.*

# FRANK QUINTANA,
*Appellant.*

(CR86-03303; CA A43841)
(Cases Consolidated)

750 P2d 518

Jeffrey C. Hollen, Newport, argued the cause for appellant Quintana. With him on the briefs were Richardson, Ouderkirk & Hollen, Newport.

Guy B. Greco, Newport, argued the cause for appellant Damofle. With him on the brief was Greco & Escobar, Newport.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Warren, J., dissenting.

## ROSSMAN, J.

Defendants appeal their convictions for criminal mistreatment in the second degree, contending that the trial court erred in denying their motions for acquittal under ORS 136.445. We affirm.

The material facts are not in dispute. Defendants lived with their three children, aged 5 months, 1 1/2 years, and 5 years, in a room constructed of plastic and wood inside a barn. The trial court found the following to be an accurate statement of the evidence presented at trial:

"On October 31, 1986, the following conditions existed:

"1.)  it was cold and wet inside;

"2.)  it was musty and had an overwhelming stench;

"3.)  a 3-lb. coffee can was being used as a toilet and was full of urine. There were no barriers around the urine nor anything to prevent the two toddlers from getting to it;

"4.)  near the can of urine (almost on top of it) were various items such as crackers and formula;

"5.)  there was ground glass in the carpet at the entrance to the room;

"6.)  there were sacks of garbage everywhere with flies buzzing around;

"7.)  there was [sic] ground-in food crumbs in living area and flies everywhere;

"8.)  clothing, dirty diapers, and garbage were strewn all over living area;

"9.)  dirty dishes were sitting on the floor and were in sacks on the floor;

"10.) baby bottles with sour contents were on the floor;

"11.) there was a gasoline container, partially filled near the entrance (Ms. Campbell testified it smelled like gasoline);

"12.) the two children who could walk were running around in underwear barefoot;

"13.) there were matches within easy reach of the children;

"14.) the clothing for the children which was strewn around the living area was smelly and wet as were the blankets on the beds."

The trial court found that

"[t]he three children were exposed to a clear and present *threat* of harm by virtue of the woefully unsanitary living conditions brought upon by Defendants' failure to perform the basic obligations one should expect of parents caring for their children. * * * Without question, creation of, or allowing the physical environment to deteriorate into the condition found in this case constitutes a *gross* deviation from the standard of care that a reasonable person would observe in the situation." (Emphasis in original.)

Defendants were convicted of criminal mistreatment in the second degree under ORS 163.200(1):

"A person commits the crime of criminal mistreatment in the second degree if, with criminal negligence and in violation of a legal duty to provide care for another person, the person withholds necessary and adequate food, physical care or medical attention from that person."

Criminal mistreatment requires criminal negligence. ORS 161.085(10) provides:

" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Defendants concede that they had a legal duty to provide care. The state concedes that there was no evidence that defendants failed to provide adequate food or medical care. The children had not been injured.

The issue boils down to whether defendants failed to provide adequate "physical care." Defendants contend that, without actual physical harm, "a deprivation or affirmative mistreatment of a victim," they cannot be liable under the statute. They argue that, without that narrowing construction, the statute is vague and violates Article I, Section 20, of

the Oregon Constitution and the Fourteenth Amendment.[1] The state argues that no physical injury is required, because the statute is intended to protect dependent persons from mistreatment other than physical violence and that that construction is constitutional.

By its terms, the statute punishes the withholding of necessary and adequate physical care by those with a duty to a dependent person; the withholding must constitute a gross deviation from the standard of care which a reasonable person would exercise in such a situation. Defendants' challenge focuses on whether the term "physical care" renders the statute impermissibly vague.

■ A criminal statute is unconstitutionally vague if it is not "sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties," *State v. Graves,* 299 Or 189, 195, 700 P2d 244 (1985), and if it is "so vague that it allows a judge or jury unbridled discretion to decide what conduct is prohibited in a given case." *State v. Cornell/Pinell,* 304 Or 27, 29, 741 P2d 501 (1987).

The term "physical care" is not defined in the statute. Therefore, we apply its ordinary meaning. *Perez v. State Farm Mutual Ins. Co.,* 289 Or 295, 299, 613 P2d 32 (1980). The term "physical" means "of or relating to the body * * * often opposed to mental" or "concerned or preoccupied with the body and its needs." *Webster's Third New International Dictionary* 1706 (1976). The term "care" means "serious attention; * * * attention accompanied by caution, pains, wariness, personal interest, or responsibility * * * responsibility for or attention to safety or well being." *Webster's, supra,* 338. The term "physical care" thus includes attention to the safety or well being of the body. That attention necessarily includes attention to dangers in the body's environment.

---

[1] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Amendment XIV provides, in part:

"'* * * nor shall any State deprive any person of life, liberty, or property, without due process of law. * * *'"

The fact that the term "physical care" is a broad one does not make it vague. The legislature need not "define an offense so precisely that, in every case, a person can determine the specific conduct that will fall within that statute's reach." Only a "reasonable degree of certainty" is required. *State v. Cornell/Pinell, supra,* 304 Or at 29-30. We have upheld similar statutes in the past. ORS 163.545, which punishes a person who, "with criminal negligence, leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child" was upheld against a vagueness challenge in *State v. Mills,* 52 Or App 777, 629 P2d 861, *rev den* 291 Or 662 (1981). We noted that, to accomplish its purpose of ensuring that children not be left unattended in situations where they may come to harm, the legislature could not be more specific because of the "impossibility of detailing in advance" all the ways in which an unattended child could be endangered. However, the court held that the statute provided "fair notice" of prohibited conduct. 52 Or App at 783; *see also State v. McMaster,* 259 Or 291, 486 P2d 567 (1971).

■ Similarly, the statute here provides fair notice. It requires those under a duty to provide care for another not to withhold necessary and adequate care for the safety or well being of the other's body. The care giver is liable for actions which constitute a gross deviation from the standard of care which a reasonable person would exercise in such a situation.

For the same reasons, the statute is not impermissibly vague under the United States Constitution. *State v. Cornell/Pinell, supra,* 304 Or at 30.

■ Defendants argue that the statute should be held to require that actual harm occur before it is violated. Such a construction would be inconsistent with the clear language of the statute, which focuses only on the withholding of care, not its consequences.

Defendants' fundamental objection to the statute, although focused on the definition of "physical care," seems more properly a challenge to the concept of criminal negligence itself; they seek to use their definition of physical care to undermine the statutory element of a gross deviation from the standard of care. However, the criminal negligence standard is

not impermissibly vague. *State v. Mills, supra,* 52 Or App at 783.[2]

■ Defendant father also assigns as error that the trial court admitted a portion of a tape-recorded statement by mother in which she stated that she was aware that drinking urine could be hazardous to the children's health:

Q: "Wouldn't you agree that's kind of a dangerous situation if a kid were to get to that [can of urine] and drink it?"

A: "Yes, we uh, we uhm, we knew it * * *."

He argues that the testimony could not be admitted because the mother was not an expert. The state argues that the testimony was properly received as an admission of a party under OEC 801(4)(b). The state is correct.

■ The evidence in the record amply supports the trial court's finding that defendants failed to provide adequate physical care for their children. The court's conclusion that defendants' conduct was a gross deviation from the standard of care is also amply supported by the evidence. In the words of the court, "[T]he Defendants essentially surrounded their children with alligators."

Affirmed.

**WARREN, J.,** dissenting.

Because I disagree with the majority's interpretation of ORS 163.200(1) and the ultimate result of the case, I dissent.

The majority holds that the statute is not unconstitutionally vague and that it does not require actual harm to occur before it is violated. 89 Or App at 624. In my opinion, the statute *is* vague and the majority's reading of the statute is contrary to established principles of statutory interpretation.

The majority focuses on the interpretation of "physical care" and concludes that that term is not vague. It is the term "adequate" which renders the statute unconstitutionally vague. The statutory standard "adequate physical care" is so subjective as to provide a judge or jury no guidance whatsoever

---

[2] The dissent's contention that the term "adequate physical care" is impermissibly vague likewise ignores the standard supplied by the criminal negligence statute.

in determining whether a defendant's conduct has violated it. It is impossible to enumerate all of the conditions that may exist from time to time in every household, however humble or affluent, that a jury might consider to be unsanitary or dangerous. For example, a jury might consider the existence of unwashed dishes in a kitchen sink to be unsanitary or believe that a parent owning a swimming pool is criminally liable because the pool poses a potential for harm regardless of whether the children were supervised and unharmed. If the statute is read as the majority reads it, the presence of unsanitary or dangerous conditions without more might subject a person to criminal prosecution. In any event, the statute criminalizes the "withholding of necessary and adequate * * * physical care[.]" In other words, it punishes the inadequacy of the care. That defendants may have "surrounded their children with alligators" but they were nevertheless healthy and uninjured is at least as consistent with adequate care as with the lack of it.

A criminal statute attacked as vague can sometimes be saved by a judicial interpretation. *State v. Robertson,* 293 Or 402, 411, 649 P2d 569 (1982). The term in question should be construed together with the other statutory terms. Withholding necessary and adequate food or medical attention, which is also punishable under the statute, ordinarily results in injury to the protected persons. To assure consistent interpretation of all the statutory terms, withholding physical care, to be criminally punishable, must also result in some injury to the victim.

Moreover, it is obvious from a comparison of particular offenses against persons in ORS chapter 163, that when the legislature has intended to punish the mere creation of the risk of physical injury, it has expressly so provided. The child neglect statute, ORS 163.545, for example, makes a person criminally liable for neglecting a child for a period of time "as may be likely to endanger the health or welfare of such child." A person is liable for recklessly endangering another under ORS 163.195 when the person creates "a substantial risk of serious physical injury." ORS 163.197 defines "hazing" as subjecting a person to "bodily danger or physical harm or a likelihood of bodily danger or physical harm."

The construction of statutes relating to the same subject should be consistent. The legislature has, in other contexts, prohibited directly the creation of a risk of physical injury when it has intended to create criminal liability for that conduct. It follows that here the legislature did not intend to impose liability for mistreatment in the absence of an injurious result.

I would hold that the evidence of unsanitary or dangerous conditions found on the day of arrest was insufficient by itself to convict defendants of criminal mistreatment under ORS 163.200(1).[1]

---

[1] That evidence could suffice under the statutes authorizing juvenile court jurisdiction, because under those, as opposed to criminal statutes, the state is permitted to intervene "to protect a child from risk in the absence of actual damage to the child." *State ex rel Juv. Dept. v. Rhoades,* 73 Or App 192, 196, 698 P2d 66, *rev den* 299 Or 443 (1985).