2001 WY 22

**Dennis Eugene STATEZNY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 00–119.**

Supreme Court of Wyoming.

Feb. 28, 2001.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel, and Ryan R. Roden, Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Senior Assistant Attorney General. Argument by Ms. Cooley.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1] Appellant, Dennis Eugene Statezny, challenges his conviction for unlawful clandestine laboratory operations. He contends that the statutes governing that crime are unconstitutionally vague both facially and as applied to the facts of this case. Continuing with that argument, he contends that he was denied due process of law because the governing statutes provide no standard of conduct or notice of forbidden conduct, thus allowing for arbitrary and discriminatory enforcement. Statezny also maintains that his conviction is not supported by substantial evidence.

[¶ 2]· We affirm.

## ISSUES

[¶ 3] Statezny advances these issues:

I. Whether W.S. § 35–7–1058 and W.S. § 35–7–1059 are unconstitutionally vague facially and as applied to the facts of this case, denying him due process of law, because they provide no standard of conduct or notice of forbidden conduct and it allows for arbitrary and discriminatory enforcement?

II. Whether Appellant's conviction for possession with intent to engage in unlawful clandestine laboratory operations can stand when insufficient evidence supports it?

Those same issues are essentially echoed in the State's statement of the issue on appeal.

## FACTS

[¶ 4] Before we set out the operative facts of this case, it is useful to provide the wording of the statutes at issue here. Wyo. Stat. Ann. § 35–7–1058 (LEXIS 1999) provides in pertinent part:

(a) As used in this article:

. . . .

(ii) "Clandestine laboratory operation" means:

(A) Purchasing or procuring chemicals, supplies, equipment or a laboratory location for the illegal manufacture of controlled substances;

(B) Transporting or arranging for the transportation of chemicals, supplies or equipment for the illegal manufacture of controlled substances;

(C) Setting up equipment or supplies in preparation for the illegal manufacture of controlled substances; or

(D) Distributing or disposing of chemicals, equipment, supplies or products used in or produced by the illegal manufacture of controlled substances.

. . . .

(iv) "Equipment" or "laboratory equipment" means all products, components or materials of any kind when used, intended for use or designed for use in the manufacture, preparation, production, compound-

ing, conversion or processing of a controlled substance in violation of this article. "Equipment" or "laboratory equipment" includes:

    (A) Glass reaction vessel;

    (B) Separatory funnel;

    (C) Glass condenser;

    (D) Analytical balance; or

    (E) Heating mantle.

. . . .

(vi) "List I controlled substance precursor" means, including a chemical reagent, any salt, isomer or salt of an isomer of:

. . . .

    (H) Ephedrine;

. . . .

(vii) "List II controlled substance precursor" means, including a chemical reagent, any salt, isomer or salt of an isomer of:

. . . .

    (B) Acetone;

. . . .

    (E) Hydrochloric acid;

[¶ 5]   Wyo. Stat. Ann. § 35–7–1059 provides:

(a) It is unlawful for any person to knowingly or intentionally:

(i) Possess a List I or II controlled substance precursor with the intent to engage in a clandestine laboratory operation;

(ii) Possess laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation;

(iii) Sell, distribute or otherwise supply a List I or II controlled substance precursor, laboratory equipment or laboratory supplies knowing it will be used for a clandestine laboratory operation;

(iv) Conspire with or aid another to engage in a clandestine laboratory operation.

(b) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than twenty (20) years, a fine of not more than twenty-five thousand dollars ($25,000.00), or both.

(c) A person who violates subsection (a) of this section is guilty of a felony punisha-

ble by imprisonment for not more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both if the judge or jury also finds any one (1) of the following conditions occurred in conjunction with that violation:

(i) Illegal possession, transportation or disposal of hazardous or dangerous material or while transporting or causing to be transported materials in furtherance of a clandestine laboratory operation, there was created a substantial risk to human health or safety or a danger to the environment;

(ii) The intended laboratory operation was to take place or did take place within five hundred (500) feet of a residence, business, church or school; or

(iii) Any phase of the clandestine laboratory operation was conducted in the presence of a person less than eighteen (18) years of age.

(d) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than forty (40) years, a fine of not more than one hundred thousand dollars ($100,-000.00), or both if the judge or jury also finds any one (1) of the following conditions occurred in conjunction with that violation:

(i) Use of a firearm;

(ii) Use of a booby trap.

[¶ 6]   The facts which form the basis for Statezny's conviction follow. We note, before setting them out, that Statezny represented himself in the trial court, and he did not testify or present any evidence in his own behalf. He did cross-examine many of the State's witnesses. On August 21, 1999, a resident of Afton called the Afton Police Department to assist her in inspecting an apartment for which the rent was past due. The tenant had quit the premises, and an unknown male person was apparently living in the apartment. Although the apartment was locked, it was possible to gain access to it through a window (eventually the police advised the apartment's owner to place a large stick in the window to prevent it from being opened from the outside). The apartment

was above an Afton business, the Cowboy Bar.

[¶ 7] While the police officer was there, he noticed a marijuana plant in the living room. As a result of that observation, the police obtained a warrant to search the apartment. The police returned on August 22, 1999, to conduct that search. The marijuana plant was seized.[1] During the course of that search, the police found other incriminating evidence that included drug paraphernalia and other items that appeared to be associated with a clandestine drug operation. As a result of that discovery, the police obtained a second search warrant. During that search, the police found and seized a Coleman gas stove, Statezny's driver's license, a bottle of PH test strips, two used syringes, pay stubs belonging to Statezny, two chemistry books, an Ace Glass ordering catalogue, a physics book, a set of scales, an antler smoking pipe, a brass smoking pipe, empty pill capsules, and neoprene gloves. The police also discovered some tubing that was found to have residue that tested positive for pseudoephedrine, a precursor of methamphetamine, a bottle of 99% isopropyl alcohol, a broken glass beaker, a glass coffee decanter that contained the empty pill capsules, a gallon can of acetone, a gallon can of Coleman fuel, several boxes of Efidac 24, a baggy containing a tan solid substance, and one gallon of hydrochloric acid.

[¶ 8] Statezny was arrested pursuant to warrant, and one of the items found in his personal effects was a baggy of a white powdery substance that turned out to be methamphetamine.

[¶ 9] The tenant who rented the apartment above the Cowboy Bar testified that she saw Statezny bring the chemicals and laboratory equipment into the apartment, and that Statezny occupied the west bedroom where much of that material was found. She also testified that prior to the searches, she had vacated the apartment and left Statezny in charge of the whole place. In addition, she related a story of asking Statezny what he was going to do with all the items he was bringing into the apartment, "cook up a batch of crank?" Statezny's reply was that he could not because his glassware was broken. The record also revealed that another

acquaintance of Statezny's observed broken glassware, belonging to him, in a storage unit. That acquaintance also observed that Statezny seemed very concerned about where the broken glassware had been disposed of and wanted to know in what dumpster the acquaintance had put it.

[¶ 10] In addition to this evidence, an expert witness from the Wyoming State Crime Laboratory, whose credentials included training with the Clandestine Laboratory Investigation Association, testified. Her testimony demonstrated that many of the items possessed by Statezny were the resources typically found in clandestine drug operations. As an example, one exhibit entered into evidence by the State tested positive for isopropanol, a solvent that can be used to extract ephedrine from tablets or pills, such as the Efidac seized from the apartment where Statezny set up his lab. Acetone can also be used in that same process, which then eventuates in the production of methamphetamine. Hydrochloric acid is also a chemical used in the illegal manufacture of methamphetamine.

## CONSTITUTIONALITY OF CLANDESTINE LABORATORY OPERATIONS STATUTES

[¶ 11] The issues raised in this appeal with respect to the constitutionality of the clandestine laboratory operations statutes were not raised before the trial court. As a general rule, in the absence of fundamental or plain error (which Statezny does not argue here), we will not consider the unconstitutionality of a statute if the question is not raised in the trial court. Not even all errors of constitutional dimension justify reversal under the plain-error doctrine, which should only be applied where the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See Hopkinson v. State*, 664 P.2d 43, 50 (Wyo.1983); and *Britton v. State*, 976 P.2d 669, 671 (Wyo.1999). In the *Hopkinson* case we deviated from our usual rule because it was a death penalty case, but no such exigency is present here. Where such an argument is not made in the court below, and not articulated on appeal with cogent argument and pertinent authority, we decline to ad-

1. It is apparent from the record that the marijuana plant did not belong to Statezny, but rather to the tenant, who had failed to pay the rent and

who had permitted Statezny to use the apartment.

dress it. *Davis v. State,* 859 P.2d 89, 94 (Wyo.1993); also *see Sodergren v. State,* 715 P.2d 170, 174–75 (Wyo.1986); and *Jahnke v. State,* 692 P.2d 911, 928 (Wyo.1984).

[¶ 12] Moreover, challenging a statute as facially unconstitutional based on vagueness requires that the statute reach a substantial amount of constitutionally protected conduct or that it specifies no standard of conduct at all. The ultimate test is whether a person of ordinary intelligence could read the statute and comprehend the conduct prohibited. *Campbell v. State,* 999 P.2d 649, 657 (Wyo.2000). In addition, every statute is presumed to be constitutional. While penal statutes are to be strictly construed, they need not be given unnecessarily narrow meaning in disregard of the obvious legislative purpose and intent. *Id.*

[¶ 13] The thrust of Statezny's argument is that he was merely in possession of common household chemicals, as well as other items that are as common in wholly innocent settings as they are in clandestine laboratory operations. We have set out the evidence against him in detail above, and we have set out the statutes in detail. First, Statezny was in possession of more than just innocent household chemicals. He possessed methamphetamine precursors. Secondly, the governing statutes require the State to prove beyond a reasonable doubt that he not only possessed those sorts of things, but that he possessed them with intent to engage in a clandestine laboratory operation. Given the testimony of his co-tenant that Statezny was prepared to cook up a batch of "crank," the fact that ephedrine was found in a piece of tubing seized from the apartment, and that Statezny possessed methamphetamine at the time of his arrest, the jury could readily infer that he possessed the disputed chemicals with the intent to manufacture methamphetamine. Indeed, from our reading of the evidence, Statezny might well have been convicted of the more serious crime described in Wyo. Stat. Ann. § 35–7–1059(c)(ii), rather than § 35–7–1059(a). The evidence at trial included testimony which informed the court and jury that because of the danger posed by the volatility of chemicals used in the operation of a clandestine drug laboratory, such materials pose a significant danger of explosion and fire, and must be handled with great care by investigators. This is the reason that § 35–7–1059(c)(ii) enhances the penalty for violation of this law when the laboratory is within 500 feet of a residence, business, church, or school.

[¶ 14] We decline to further consider the constitutionality of the clandestine laboratory operations statute under these circumstances, where we find no suggestion that the statutes are unconstitutional on the face of things, or as applied to Statezny.

## SUFFICIENCY OF THE EVIDENCE

[¶ 15] The benchmark for review of sufficiency of the evidence claims is whether the evidence, when viewed in the light most favorable to the State, is such as to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. *Mora v. State,* 984 P.2d 477, 481 (Wyo.1999); *Rowe v. State,* 974 P.2d 937, 940–41 (Wyo.1999). As set out more fully above, the evidence is more than sufficient for the jury to have found Statezny guilty of the crime charged beyond a reasonable doubt.

[¶ 16] We affirm the judgment and sentence of the district court, in all respects.