2001 WY 93

Michael Sean BROWNING,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 00–166.

Supreme Court of Wyoming.

Oct. 9, 2001.

Sylvia L. Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; Diane Courselle, Director, Wyoming Defender Aid Program; and Elizabeth Franklin, Student Director, Representing Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In February 2000, appellant, Michael Sean Browning, entered nolo contendere pleas to aiding and abetting an unlawful clandestine laboratory operation in violation of Wyo. Stat. Ann. § 35–7–1059(a)(ii) (LexisNexis 2001), a felony, and possession of a controlled substance (methamphetamine) in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(C) (LexisNexis 2001), a misdemeanor. Appellant subsequently filed what the district court characterized as a motion to withdraw the appellant's pleas, which the district court denied. On appeal, appellant contends that Wyo. Stat. Ann. § 35–7–1059(a)(ii) is unconstitutionally vague, both facially and as applied to his case, and that the district court erred by not allowing him to withdraw his pleas because the State al-legedly breached the parties' plea agreement. We affirm.

## ISSUES

[¶ 2] Appellant raises two issues on appeal:

I. Does Wyoming Statute 35–7–1059 violate principles of due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, Section 6 of the Wyoming Constitution because the statute is vague and generally fails to provide fair notice to citizens of their potential liability?

II. Did the trial court err when it denied Mr. Browning's motion to withdraw his plea, when Mr. Browning proved that the State reneged on its obligations pursuant to the plea agreement?

The State of Wyoming, as appellee, phrases the issues in substantially the same manner.

## FACTS

[¶ 3] On February 15, 2000, the district court held a change of plea hearing. The parties indicated that they had reached a plea agreement, the terms of which were placed on the record. According to the specified terms, appellant agreed to plead nolo contendere to both of the aforementioned charges, and the State agreed to recommend that any sentence be suspended (crediting appellant for time previously served) and that the district court grant appellant probation immediately. In placing the terms of the plea agreement on the record, neither party referenced returning appellant's personal property. The parties apparently did not file a formal written plea agreement with the district court.

[¶ 4] The State provided a factual basis for appellant's pleas, which appellant assented to and the district court accepted. According to that factual basis, appellant and his female companion, Deanna Pine, traveled from Custer, South Dakota, to Niobrara County, Wyoming, in August 1999. After the two had a "falling out," a Niobrara County deputy sheriff stopped appellant, who was driving a Chevy Blazer. Appellant consented to a search of the Chevy Blazer, from

which the deputy sheriff seized a triple beam Ohaus scale and an orange industrial water cooler containing tubing, acid, iodine, phosphorus, alcohol-based solvent, methamphetamine, and other chemicals and materials used "in the synthesis of methamphetamine." Several of the materials were in a partial stage completion of methamphetamine "synthesis" and unused materials that would be "useful for future synthesis of methamphetamine" remained.

[¶ 5] The deputy sheriff also seized a piece of paper from appellant's personal address book that contained various figures and notes associated with the "synthesis of methamphetamine," including that it would cost $750.00 to obtain a pound of sudanephrine or epinephrine (a principal ingredient in methamphetamine), and a glass tube with methamphetamine residue was seized from appellant's personal effects and clothing. Appellant's fingerprint appeared on one item in the aforementioned water cooler, and authorities seized a towel stained with iodine from Pine, who had iodine stains on her hand, along with papers indicating an interest in ingredients associated with the "synthesis of methamphetamine."

[¶ 6] The district court accepted appellant's pleas and imposed sentence in accordance with the plea agreement. The district court filed a formal Judgment and Sentence on April 12, 2000. The Judgment and Sentence states, without specifying the terms of the parties' plea agreement, that "said pleas were the product of a plea agreement which was fully disclosed and accepted by the Court." The second-to-last paragraph in the Judgment and Sentence, which is separate and apart from the district court's findings and reference to the parties' plea agreement, also states:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any property of the Defendant held by the Sheriff of Niobrara County be released to the Defendant or his duly authorized agent, except for property of the Defendant which now is held or detained as, or for evidence in any pending state or federal criminal action, proceeding or investigation, and except for property of the Defendant which otherwise is unlawful for the Defendant to control or possess.

[¶ 7] On April 10, 2000, appellant, pro se, filed a motion to support a writ of habeas corpus, which the district court treated as a motion to withdraw appellant's pleas. Appellant appeared with counsel for a motion hearing later that day, claiming that the State had not returned his personal property in accordance with the parties' plea agreement, and requesting that the district court allow him to withdraw his pleas.

[¶ 8] The Niobrara County sheriff's department apparently possessed appellant's Chevy Blazer and several items of appellant's personal property ("a lot of stuff," tools, "very very good wrenches," a black leather coat, a set of jumper cables, overnight bag, motorcycle title allegedly endorsed to appellant, etc.). After receiving information that a Tim Barber reported that the black leather coat had been stolen from him in Custer, South Dakota, the Niobrara County sheriff's department mailed the coat, motorcycle title, and jumper cables to the Custer, South Dakota sheriff's department. Because Mr. Barber indicated that he would not pursue criminal charges if these items were released to him, the South Dakota authorities apparently released the items to Barber. Appellant's remaining personal property, including the Chevy Blazer, tools, and "stuff," etc., was returned to an individual appellant designated to receive the property on his behalf. Appellant claimed at the hearing that the remaining items were of "considerable value" and necessary to "liquidate everything I have for my daughter and for my legal aid."[1]

[¶ 9] The district court found that returning appellant's personal property was an enforceable term of the parties' plea agreement, but that the black leather coat was subject to a pending criminal investigation in Custer, South Dakota, and fell within the exception contained in the applicable Judgment and Sentence provision. The district court was not sure why the jumper cables

---

1. Appellant was facing a felon in possession of a firearm indictment in federal court, to which he conditionally pled guilty. *See United States v. Browning,* 252 F.3d 1153, 1156 (10th Cir.2001).

and motorcycle title were sent to South Dakota and concluded that the circumstances did not warrant allowing appellant to withdraw his pleas, indicating also that it would enforce the agreement "and see that [appellant's] rightful property is provided to him."

## DISCUSSION

### CONSTITUTIONALITY OF WYO. STAT. ANN. § 35–7–1059

[¶ 10] Appellant first argues that Wyo. Stat. Ann. § 35–7–1059 is unconstitutionally vague, both facially and as applied to his case. In particular, appellant contends that the non-exclusive list of "laboratory equipment" in Wyo. Stat. Ann. § 35–7–1058(a)(iv) (LexisNexis 2001) contains items one ordinarily can lawfully possess, and the statute fails to adequately define the circumstances from which one can infer that an actor "intended" to engage in a clandestine laboratory operation as required by Wyo. Stat. Ann. § 35–7–1059(a)(ii). Appellant further argues that the statute is vague as applied to the facts of his case because he did not have sufficient notice that "merely transporting items that belonged to Ms. Pine," which "were legal items to possess," could allow one to infer that he, based on the combination of these items, intended to engage in a clandestine laboratory operation.

[¶ 11] In challenging a statute for facial vagueness, appellant must demonstrate that the statute reaches a "substantial amount of constitutionally protected conduct;[2] or the statute specifies no standard of conduct at all." *Campbell v. State*, 999 P.2d 649, 657 (Wyo.2000). The ultimate test is "whether a person of ordinary intelligence could read the statute and comprehend what conduct is prohibited" because laws must provide explicit standards for those who apply them. *Id.* " 'A statute employs a standard, for purposes of vagueness, if "by [its] terms or as authoritatively construed [it applies] without question to certain activities, but whose application to other behavior is uncertain," ' " whereas a vague statute im-

permissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. *Id.* (quoting *Luplow v. State*, 897 P.2d 463, 466 (Wyo.1995) and *Griego v. State*, 761 P.2d 973, 976 (Wyo.1988)).

[¶ 12] Every law is presumed constitutional, with all doubt resolved in its favor. *Campbell*, 999 P.2d at 657 (quoting *Luplow*, 897 P.2d at 466 and *Keser v. State*, 706 P.2d 263, 266 (Wyo.1985)). "In considering statutory language, the plain, ordinary and usual meaning of the words used controls in the absence of clear statutory provisions to the contrary." *Campbell*, 999 P.2d at 657 (citing *Keser*, 706 P.2d at 266). While penal statutes are strictly construed, they need not be given unnecessarily narrow meaning in disregard of the obvious legislative purpose and intent. *Campbell*, 999 P.2d at 657. Indeed, " 'lack of precision is not itself offensive to the requirements of due process.' " *Sorenson v. State*, 604 P.2d 1031, 1033 (Wyo.1979) (quoting *Roth v. United States*, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957)).

[¶ 13] Wyo. Stat. Ann. § 35–7–1059(a) provides, in pertinent part:

> (a) It is unlawful for any person to knowingly or intentionally:
>
> * * *
>
> (ii) Possess laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation[.]

Wyo. Stat. Ann. § 35–7–1058(a)(iv) defines "[e]quipment" or "laboratory equipment" as "all products, components or materials of any kind when used, intended for use or designed for use in the manufacture, preparation, production, compounding, conversion or processing of a controlled substance in violation of this article." The same section provides that "[e]quipment" or "laboratory equipment" includes a "[g]lass reaction vessel," "[s]eparatory funnel," "[g]lass condensor," "[a]nalytical balance," or "[h]eating mantle." Wyo. Stat.

---

**2.** Appellant does not argue that the statute reaches any form of constitutionally protected conduct.

Ann. § 35–7–1058(a)(ii) defines "[c]landestine laboratory operation" as:

> (A) Purchasing or procuring chemicals, supplies, equipment or a laboratory location for the illegal manufacture of controlled substances;
>
> (B) Transporting or arranging for the transportation of chemicals, supplies or equipment for the illegal manufacture of controlled substances;
>
> (C) Setting up equipment or supplies in preparation for the illegal manufacture of controlled substances; or
>
> (D) Distributing or disposing of chemicals, equipment, supplies or products used in or produced by the illegal manufacture of controlled substances.

■ [¶ 14] Considering our precedent and the applicable statutory language, the statute, without question, applies to certain activities. We addressed the constitutionality of Wyo. Stat. Ann. § 35–7–1059(a) in *Statezny v. State*, 2001 WY 22, ¶¶ 11–14, 18 P.3d 641, 644–45 (Wyo.2001). In that case, Statezny was convicted of engaging in an unlawful clandestine laboratory operation in violation of Wyo. Stat. Ann. § 35–7–1059(a) (Lexis 1999). The items which formed the basis for Statezny's conviction included a Coleman gas stove and fuel, PH test strips, two used syringes, pay stubs, two chemistry books, Ace Glass ordering catalogue, physics book, scales, smoking pipes, empty pill capsules, neoprene gloves, tubing with pseudoephedrine (methamphetamine precursor), isopropyl alcohol, glass beaker, coffee decanter, gallon can of acetone, Efidac 24, and hydrochloric acid. *Statezny*, 2001 WY 22, ¶ 7, 18 P.3d at 644. Officers also seized a bag containing methamphetamine from Statezny's personal effects and a trial witness apparently testified that when she asked Statezny what he was going to do with "all the items he was bringing into the apartment, 'cook up a batch of crank?' " he replied that "he could not because his glassware was broken." *Id.* at ¶¶ 8–9, 18 P.3d at 644.

[¶ 15] Statezny argued that Wyo. Stat. Ann. § 35–7–1059 was similarly unconstitutionally vague. The "thrust of Statezny's argument" was that he merely possessed "common household chemicals, as well as other items that are as common in wholly innocent settings as they are in clandestine laboratory operations." *Statezny*, 2001 WY 22, ¶ 13, 18 P.3d at 645. Finding that Statezny possessed more than "just innocent household chemicals," and that the statute required not only the possession of such items, but also the possession with intent to engage in a clandestine laboratory operation, we declined to conduct further analysis with "no suggestion that the statutes are unconstitutional on the face of things, or as applied to Statezny." *Id.* at ¶¶ 13–14, 18 P.3d at 645.

[¶ 16] Appellant argues that *Statezny* is factually distinguishable because Statezny possessed both methamphetamine precursors and equipment required for methamphetamine production in violation of Wyo. Stat. Ann. § 35–7–1059(a)(i) and (ii), whereas appellant only possessed equipment and not precursors.[3] Considering the factual and legal similarities between *Statezny* and the instant case, we do not view this as a meaningful distinction. In the context of the statutory language (not the sufficiency of the evidence), the issues in both cases are identical—does the statutory language allow a person of ordinary intelligence to comprehend what is prohibited? In *Statezny*, we found "no suggestion" that the statute was deficient in this regard. *Statezny*, 2001 WY 22, ¶ 14, 18 P.3d at 645.

[¶ 17] The statute defines nearly every applicable term, including "laboratory equipment" and "[c]landestine laboratory operation." The list of "laboratory equipment" contained in Wyo. Stat. Ann. § 35–7–1058(a)(iv), while not exclusive, applies to the specified items, as well as "all products, components or materials of any kind when used, intended for use or designed for use in the manufacture, preparation, production, compounding, conversion or processing of a controlled substance...." As both parties recognize, it is not the mere possession of "laboratory equipment or supplies" that is unlawful; rather, it is unlawful to possess

---

3. Depending on more specific information, acid, iodine, phosphorous, and alcohol-based solvent might also be considered precursors under Wyo. Stat. Ann. § 35–7–1058(a)(vi) and (vii).

these items with the intent to "engage in a clandestine laboratory operation[.]" Wyo. Stat. Ann. § 35–7–1059(a)(ii). Appellant does not contend that "[c]landestine laboratory operation," the object of "intent," is vague. In fact, the definition of "[c]landestine laboratory operation" sets forth several specific actions (i.e., purchasing or procuring, transporting, setting up equipment, distributing or disposing) in the context of manufacturing a controlled substance, which further defines the object of "intent." Wyo. Stat. Ann. § 35–7–1058(a)(ii).

[¶ 18] Appellant essentially argues that the statute is vague because "intent" might be inferred from the very items possessed, and the statutory language does not provide sufficient guidance regarding what circumstances permit the inference of an intent to "engage in a clandestine laboratory operation[.]" However, other criminal statutes state "intent" in general terms. For example, Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2001) provides that a "person is guilty of burglary if, without authority, he enters or remains in a building * * * with intent to commit larceny or a felony therein." The objects of that intent, larceny or a felony, are, not unlike the intent to "engage in a clandestine laboratory operation," specifically defined in other statutes. In addition, Wyo. Stat. Ann. § 35–7–1031(a) provides that it "is unlawful for any person to . . . possess with intent to manufacture or deliver, a controlled substance." A finder of fact may infer specific intent from circumstantial evidence. *Wentworth v. State*, 975 P.2d 22, 26 (Wyo. 1999).

> "The mind of an alleged offender may be read from his acts, his conduct, his words and the reasonable inferences which may be drawn from the circumstances of the case. To hold otherwise would create an impossible burden in a case requiring a finding of specific intent."

*Id.* (*quoting Schiefer v. State*, 774 P.2d 133, 135 (Wyo.1989)). Circumstantial evidence which proves the " 'facts and circumstances from which the main fact to be proved reasonably follows according to common experience of mankind' " is sufficient to establish the elements of a crime. *Saldana v. State*, 846 P.2d 604, 620 (Wyo.1993) (*quoting Murray v. State*, 671 P.2d 320, 328 (Wyo.1983)) (holding that circumstantial evidence of Saldana's connection with previously convicted drug dealers and the quantity and purity of cocaine ("such that it would not be likely a possessor would have acquired it for personal use") justified inference of specific intent to deliver). *See also Patterson v. State*, 691 P.2d 253, 260 (Wyo.1984), *cert. denied*, 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985).

[¶ 19] The statute is not rendered unconstitutionally vague on its face merely because the requisite intent might in some instances be inferred from circumstantial evidence, possibly including the nature and character of the items possessed. We are cognizant of appellant's concern in this regard; however, the concern does not arise from any vagueness in the statutory language, but is more appropriately addressed in the context of the sufficiency of the evidence, an issue which is not before us. *See, generally, Bush v. State*, 908 P.2d 963, 966–68 (Wyo.1995).

[¶ 20] We find that, based on our decision in *Statezny* and the applicable statutory language, Wyo. Stat. Ann. § 35–7–1059(a)(ii) applies to certain conduct and is not so deficient that it sets forth "no standard of conduct at all." *Campbell*, 999 P.2d at 657. The statutory language is such that a person of ordinary intelligence can read the statute and comprehend what conduct is prohibited.

[¶ 21] Appellant also contends that the statute is unconstitutionally vague as applied to his case.[4] Accordingly, we must

---

4. The State asserts that, by entering a nolo contendere plea, appellant has waived his right to argue that the statute is unconstitutionally vague "as applied" to his particular case. *Ochoa v. State*, 848 P.2d 1359, 1363 (Wyo.1993). However, in *Ochoa*, the appellant pled nolo contendere to indecent liberties with a minor, claiming on appeal that the statute was unconstitutionally

vague both facially and "as applied." While *Ochoa* does stand for the proposition that by pleading guilty or nolo contendere, a defendant waives all non-jurisdictional defenses, we proceeded to analyze *Ochoa's* facial and "as applied" vagueness challenges, stating specifically that "they are both preserved beyond the nolo

determine whether the statute affords sufficient notice to a person of average intelligence that appellant's conduct would be illegal, and whether the facts demonstrate arbitrary and discriminatory enforcement. *McClellan v. State*, 933 P.2d 461, 466 (Wyo. 1997).

[¶ 22] Appellant reiterates his argument that the statute fails to adequately set forth the basis from which an intent to "engage in a clandestine laboratory operation" can be inferred, claiming that because one can lawfully possess the listed items, "[n]o one of ordinary intelligence could know when a combination of items gives rise to an inference of intent because there is nothing in the statute that informs them." Interestingly, appellant argues that further evidence of the statute's deficiency is the fact that he "readily acquiesced" to a search of his vehicle, for if appellant "had realized that the government would consider his actions a crime, it is highly unlikely that he would have consented to the search . . . ."

[¶ 23] Considering the aforementioned statutory language, we do not hesitate in concluding that a person of ordinary intelligence could read the statute and comprehend that it would be unlawful to possess and transport a pipe with methamphetamine residue, a separate quantity of methamphetamine, a triple beam scale, tubing, acid, iodine, phosphorous, alcohol-based solvent, and written notations indicating what it would cost to purchase a pound of sudanephrine or epinephrine. Notably, the materials seized were in a partial stage completion of methamphetamine synthesis and unused materials for future synthesis remained. Appellant, whose fingerprint appeared on one of the items contained in the water cooler, was not merely "transporting items that belonged to Ms. Pine" which might otherwise have been lawfully possessed.

[¶ 24] Constitutional notice determinations should not be based on speculation regarding why an individual subjectively "readily acquiesced" to a search. Appellant could just as easily have "readily acquiesced" in hopes that the officer would not proceed with the search or "readily acquiesced" in order to shift the responsibility to Ms. Pine once it became likely that the officer would discover the contraband contained in his vehicle.

[¶ 25] We conclude that Wyo. Stat. Ann. § 35–7–1059(a)(ii) is not unconstitutionally vague as applied to appellant's case and find no evidence that the statute was applied to appellant in an arbitrary or discriminatory manner.

## MOTION TO WITHDRAW PLEAS

[¶ 26] Appellant next argues that the State breached the parties' plea agreement by not returning all of appellant's personal property, resulting in "manifest injustice" to appellant such that he should be allowed to withdraw his pleas. The facts relevant to this issue are essentially undisputed.

[¶ 27] W.R.Cr.P. 32(d) provides that if a motion to withdraw a plea is made after sentencing, a plea "may be set aside only to correct manifest injustice." "Manifest injustice" contemplates a "situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." *McCarthy v. State*, 945 P.2d 775, 777 (Wyo.1997). It is, in part, intended to address " ' "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." ' " *United States v. Blackwell*, 127 F.3d 947, 956 (10th Cir.1997) (*quoting United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943, 113 S.Ct. 2424, 124 L.Ed.2d 645 (1993) and F.R.Cr.P. 32(d)). The party seeking to withdraw his pleas bears the burden of demonstrating manifest injustice. *State v. McDermott*, 962 P.2d 136, 139 (Wyo.1998). Justification for this heightened standard for withdrawal of a plea after sentencing is based in the

"practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of

contendere plea and properly before this court."

*Id.* at 1361, 1363.

the accused to trial by jury. But if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

*Id.* at 138 (*quoting Hicklin v. State*, 535 P.2d 743, 749 (Wyo.1975) and *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963)) (emphasis in original).

[¶ 28] A district court has discretion in determining whether a party has proved manifest injustice. Absent an abuse of that discretion, we will not disturb the district court's determination. *McDermott*, 962 P.2d at 138. A district court's decision to deny a motion to withdraw a plea "will not be reversed for an abuse of discretion so long as the district court reasonably could conclude as it did." *Nixon v. State*, 4 P.3d 864, 869 (Wyo.2000).

[¶ 29] It is dubious, at best, that returning appellant's property was actually a term of the parties' plea agreement. W.R.Cr.P. 11(e)(2) requires that if "a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court . . . at the time the plea is offered." Full disclosure of the details of plea agreements is imperative to " 'reliably guarantee that guilty pleas are knowing and voluntary and fully understood by the [court and the] parties themselves.' " *United States v. Blackner*, 721 F.2d 703, 708 (10th Cir.1983) (*quoting*

*United States v. Roberts*, 570 F.2d 999, 1007 (D.C.Cir.1977), *aff'd*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)). In accordance with W.R.Cr.P. 11, the State placed the terms of the parties' plea agreement on the record at the change of plea hearing. Appellant assented to those terms and proceeded to enter his pleas. Neither party indicated that returning appellant's property was a term of the plea agreement at that time, and the record does not contain a formal written plea agreement. The second-to-last paragraph of the Judgment and Sentence, separate and apart from the district court's plea agreement reference, does order that appellant's property be returned under certain circumstances. Because the State has not argued that this provision was not a plea agreement term and the district court found that it was indeed an enforceable term of the plea agreement, we will, for purposes of this appeal, accept the district court's finding.

[¶ 30] Appellant argues that the State breached the parties' plea agreement because the black leather coat, jumper cables, and motorcycle title were not returned to him. When a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).[5] Indeed, only "breaches of material promises" allow "a court to conclude that a plea was involuntarily induced and thus constitutionally infirm." *Rodriguez v. State of N.M.*, 12 F.3d 175, 175 (10th Cir.1993) (*citing United States v. Pollard*,

5. In *Santobello*, one prosecutor promised, as a term of the plea agreement, that the State would not make a sentence recommendation to the trial court. *Santobello*, 404 U.S. at 258, 92 S.Ct. 495. Another prosecutor appeared at sentencing and recommended the maximum sentence. The trial judge had also changed in the interim. *Id.* at 259, 92 S.Ct. 495. The new trial judge indicated that he would disregard the prosecutor's statements recommending a particular sentence, but proceeded to impose the maximum sentence. *Id.* at 259–60, 92 S.Ct. 495. The court found that the defendant "bargained" for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the State.

*Id.* at 262, 92 S.Ct. 495. The State conceded that it had made the promise to abstain from recommending a particular sentence, and the court found that the State was not in a "good position to argue that its inadvertent breach [was] immaterial" because the "staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." *Id.* The court remanded the case to the trial court to determine whether to grant the defendant specific performance of the agreement or allow the defendant to withdraw his plea. *Id.* at 263, 92 S.Ct. 495.

959 F.2d 1011, 1028 (D.C.Cir.), *cert. denied,* 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992)). "As in contract, the terms of a plea agreement and their relative materiality are evaluated by an objective standard." *Rodriguez,* 12 F.3d at 175–76.

[¶ 31] The state of the record regarding the plea agreement term at issue undermines any nexus between returning appellant's property and its inducement or consideration for him to enter his pleas. Neither party mentioned the term at the change of plea hearing in placing the plea agreement's terms of record prior to appellant entering his pleas, and the record contains no evidence regarding the value of appellant's personal property in relation to any similarly unsupported expenses he expected to incur in retaining private counsel for his federal criminal defense (appellant does not allege that his federal public defender was ineffective) or in supporting his daughter. At the change of plea hearing, the district court asked appellant if he paid child support for his daughter, to which appellant replied "[n]o, I raise her. I contribute to raising her." Accordingly, we find that appellant's pleas did not rest to a significant degree on, and certainly were not induced by, this particular term; the term was not a "material" term of the plea agreement.

[¶ 32] Nevertheless, whether the government has breached a plea agreement is reviewed *de novo. Clingman v. State,* 2001 WY 46, ¶ 4, 23 P.3d 27, 28 (Wyo. 2001) (*citing United States v. Robertson,* 45 F.3d 1423, 1442 (10th Cir.), *cert. denied,* 516 U.S. 844, 116 S.Ct. 133, 133 L.Ed.2d 81 (1995)). In determining whether a breach has occurred, we: (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered. *Clingman,* 2001 WY 46, ¶ 20, 23 P.3d at 31 (Golden, J., specially concurring, with which Lehman, C.J., joined) (*quoting United States v. Peterson,* 225 F.3d 1167, 1170–71 (10th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 893, 148 L.Ed.2d 799 (2001)). " 'Principles of general contract law guide our analysis of the government's obligations under the agreement.' " *Clingman,*

2001 WY 46, ¶ 20, 23 P.3d at 31 (*quoting Peterson,* 225 F.3d at 1170–71). It follows that, "as in contract," a party should not be released from its obligations under a plea agreement absent another party's material or substantial breach of that agreement. *See, generally, United States v. Lezine,* 166 F.3d 895, 901–04 (7th Cir.1999) (stating that a defendant must commit a "substantial breach" before the government is released from its obligations pursuant to a plea agreement and holding that the defendant's conduct constituted a "substantial breach" of the agreement); *United States v. Easterling,* 921 F.2d 1073, 1080 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991) (finding that any breach of the plea agreement by the government was not "material" in light of what occurred at sentencing); and *St. James v. People,* 948 P.2d 1028, 1032 (Colo.1997) (stating that a party is released from its plea agreement obligations in situations where the other party materially and substantially breaches an obligation under the plea agreement). A material or substantial breach is one that goes to the whole consideration of the agreement. *Williams v. Collins Communications, Inc.,* 720 P.2d 880, 891 (Wyo.1986). Several factors are relevant to whether a breach is material or substantial, including the extent to which the non-breaching party will be deprived of the benefit it reasonably expected and the extent to which the breaching party's conduct comports with the standards of good faith and fair dealing. *Id.; Stillwell Welding Co. v. Colt Trucking,* 741 P.2d 598, 600–01 (Wyo. 1987).

[¶ 33] Even if we were to assume that the property release was a "material" term of the plea agreement, appellant bargained for the return of his property under certain circumstances. The State did not breach the plea agreement by not returning the black leather coat to appellant because it clearly was held as evidence in a pending criminal theft investigation in South Dakota, a circumstance contemplated by the parties' agreement.

[¶ 34] Any breach by the State relating to the jumper cables and motorcycle title was not material or substantial. Appellant received his Chevy Blazer and its contents, overnight bag, tools, and "very very good

wrenches," etc., which would appear to comprise the items of "considerable value" to appellant in attempting to retain private counsel for his federal criminal defense and support his daughter. In this context, the State's failure to return the jumper cables and a motorcycle title already endorsed to appellant did not go to the "whole consideration of the agreement," and appellant essentially received the benefit he reasonably expected, especially considering his purpose in seeking the property's return. Appellant does not allege that the State acted in bad faith regarding the jumper cables and motorcycle title.

[¶ 35] Accordingly, the district court did not abuse its discretion in determining that the circumstances did not cause "manifest injustice."

### CONCLUSION

[¶ 36] We conclude that Wyo. Stat. Ann. § 35–7–1059(a)(ii) is not unconstitutionally vague on its face, or as applied to appellant, and that the district court did not abuse its discretion in denying appellant's motion to withdraw his pleas; therefore, appellant's convictions are affirmed in all respects. Our decision by no means condones any party breaching the terms of a plea agreement, and we " 'admonish the government to avoid occasions for questioning its meticulous adherence to the terms of a plea bargain.' . . . ." *United States v. Griffin*, 816 F.2d 1, 7 (D.C.Cir.1987) (*quoting United States v. Bullock*, 725 F.2d 118, 119 (D.C.Cir.1984)).