2001 WY 133

**Deanna Lynn PINE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–162.

Supreme Court of Wyoming.

Dec. 21, 2001.

Mary B. Guthrie, Cheyenne, WY, Representing Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In March 2000, a jury convicted appellant, Deanna Lynn Pine, of engaging in an unlawful clandestine laboratory operation in violation of Wyo. Stat. Ann. § 35-7-1059(a)(ii) (LexisNexis 2001), a felony, and possession of a Schedule II controlled substance in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(C) (LexisNexis 2001), a misdemeanor. On appeal, appellant contends that the evidence was insufficient to convict her of engaging in an unlawful clandestine laboratory operation and that Wyo. Stat. Ann. § 35-7-1059(a)(ii) is unconstitutionally vague. We affirm.

**ISSUES**

[¶ 2] Appellant raises two issues on appeal:

### ISSUE I

Whether the evidence was sufficient to sustain Pine's conviction under Wyo. Stat. Ann .... § 35-7-1059(a)(ii) (LEXIS 1999) for possession of laboratory equipment or supplies with intent to engage in a clandestine laboratory operation.

### ISSUE II

Whether Wyo. Stat. Ann. § 35-7-1059(a)(ii) (LEXIS 1999) is unconstitutional.

The State of Wyoming, as appellee, phrases the issues in substantially the same manner.

**FACTS**

[¶ 3] Appellant and Michael Browning traveled together from Arizona to South Dakota in August 1999, where they stayed for approximately one week. On August 9, 1999, the Niobrara County Sheriff's Office received a call from appellant claiming that she had been assaulted and then abandoned at Mule Creek Junction north of Lusk. Deputy Darrel Frye responded to the call and ultimately stopped a tan Chevy Blazer with Arizona license plates, which matched the vehicle description provided by appellant, as it reached the town of Lusk.[1] The driver of the Chevy Blazer was Michael Browning.

[¶ 4] After a brief conversation regarding the purpose of the stop and providing Deputy Frye his identification, Mr. Browning removed several items from the Chevy Blazer (presumably his subjective determination regarding what property belonged to appellant), including:

(1) A green Rubber Maid container of female clothing and items, including a white towel (halfway down into the container) with "yellowish-brown" stains on it, later determined to be iodine. Appellant admitted to Deputy Frye that the container was hers, but apparently denied "owning" the towel.

1. The Niobrara County Sheriff picked appellant up at Mule Creek Junction and returned with her to the sheriff's office, where Deputy Frye interviewed her.

(2) An orange water cooler. Appellant told Deputy Frye that the water cooler had been in the vehicle since she and Mr. Browning left Arizona, but claimed that it belonged to Mr. Browning.

(3) A briefcase. Appellant admitted to Deputy Frye that the briefcase was hers. In the briefcase, Deputy Frye discovered May and June 1999, receipts for several cases of fusees obtained from a Colorado company for a South Dakota company owned by an individual with whom appellant had previously resided. One receipt indicated that a "D.P." picked up three of these cases on behalf of the South Dakota company. The briefcase also contained a paper bearing the handwritten name, address, and phone number of the referenced Colorado company and other notations, including the phone number for Arizona Brake and Clutch.

Appellant told Agent Steve McFarland of the Division of Criminal Investigation that the fusees were used in the course of the South Dakota company's construction business. Interestingly, an August 8, 1999, South Dakota hardware store receipt for four three-packs of flares was also discovered in the vehicle. The "striker plates" of fusees or flares contain phosphorus, an ingredient used in the synthesis of methamphetamine.

(4) Two compact disc cases and an address book. Appellant stated that these items were hers.

(5) A closed cardboard box containing a "Furby." Appellant admitted to Deputy Frye that the "Furby" was hers. Underneath the "Furby" in the cardboard box, Deputy Frye discovered a twisted coffee filter containing a crystallized substance, later determined to be methamphetamine.

[¶ 5] At some point, Mr. Browning also handed Deputy Frye a vinyl pouch containing binoculars, a glass tube with methamphetamine residue, a Ziploc baggy with methamphetamine residue, and a book of matches. After obtaining Mr. Browning's consent, Deputy Frye searched the Chevy Blazer and discovered a blue towel wrapped around a triple-beam Ohaus "dial-a-gram" scale. A "yellow-tannish" residue appeared on the bottom of the scale. The residue apparently was not submitted for chemical testing, but the color was consistent with that of iodine. · Scales of this nature can be used to weigh or measure substances, including iodine, throughout the synthesis of methamphetamine in order to obtain a precise chemical reaction. Officers also seized a duffel bag containing male clothing and a glass pipe with methamphetamine residue from the Chevy Blazer, as well as a twisted coffee filter containing methamphetamine from underneath the driver's seat.

[¶ 6] In the water cooler, officers discovered many items frequently used to manufacture methamphetamine, including:

(1) A bottle of muriatic acid. Muriatic acid can be used to assist in crystallizing methamphetamine.

(2) A bottle of "Heet." "Heet," which contains methanol, can be used to extract phosphorous from the "striker plates" on fusees or flares.

(3) A package of coffee filters. Coffee filters can be used to filter substances at various stages in the synthesis of methamphetamine.

(4) Two cans of brake cleaner. Two of appellant's fingerprints were retrieved from the cans of brake cleaner. Appellant told Agent McFarland that, while in a Rapid City, South Dakota auto parts store, Mr. Browning instructed her to get the brake cleaner, and she took it off the shelf. Brake cleaner can be used to absorb methamphetamine oil from methamphetamine base in its liquid form.

(5) A bottle of Red Devil lye. Lye can be used to bring liquid methamphetamine to a "basic condition."

(6) A white bottle with vinyl tubing around the top. Receipts for vinyl or rubber tubing were seized from the vehicle, at least one of which was found in appellant's briefcase. Appellant disputed whether the size of the tubing indicated on the receipt matched the size of the tubing seized from the cooler.

(7) Two plastic Clairol hair color bottles cut to form funnels, which tested positive for methamphetamine.

(8) Tin foil.

(9) Glass jars, which tested positive for iodine. Iodine can be used to aid in converting ephedrine or pseudoephedrine (an ingredient essential to manufacturing methamphetamine) to methamphetamine.

(10) A tin box containing rubber stoppers, a bottle labeled pseudoephedrine that tested positive for phosphorus, and coffee filters which tested positive for iodine, "phenyl-propanone," and phosphorous, all of which have a role in the synthesis of methamphetamine.

(11) Unused quantities of most of these substances remained, such that the contents of the cooler were still useful in manufacturing additional methamphetamine.

[¶ 7] Appellant first told Agent McFarland that she did not know what was in the water cooler; however, when asked if her fingerprints would be found on any items contained in the cooler, without first having seen its contents, appellant "talked about what was inside the cooler," replying that her fingerprints might be found on the brake cleaner, her hair dye bottles that Mr. Browning made into funnels, and pill tablets (presumably pseudoephedrine). On August 10, 1999, the Niobrara County undersheriff noticed "brownish-yellowish" stains on appellant's fingertips, palms, fingers and cuticles. The undersheriff testified that the color of these stains was consistent with that of the stains on the white towel and Ohaus scale, and based on his experience, all three stains were consistent with iodine stains.

[¶ 8] Appellant was charged with knowingly possessing laboratory equipment or supplies with intent to engage in a clandestine laboratory operation in violation of Wyo. Stat. Ann. § 35–7–1059(a)(ii), a felony, and possession of a Schedule II controlled substance in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(C), a misdemeanor. Neither Mr. Browning nor appellant testified at appellant's trial. A jury convicted appellant of both offenses in March 2000, and the district court sentenced her to serve a two-and-one-half to six-year prison term for the felony conviction, concurrently with twelve months' incarceration for the misdemeanor conviction.

## DISCUSSION

### SUFFICIENCY OF THE EVIDENCE

[¶ 9] Appellant argues that the evidence produced at trial was insufficient to sustain her clandestine laboratory operation conviction. According to appellant, the State did not prove that she exercised dominion and control over, or "possessed," the water cooler, its contents, or the scales seized from the Chevy Blazer. Appellant maintains that, based on the evidence, she was nothing more than a passenger in the Chevy Blazer, which is insufficient to infer that she, as opposed to Mr. Browning, possessed the contraband. Notably, appellant does not challenge the sufficiency of the evidence as to any other element of her clandestine laboratory operation conviction, including whether the seized items constituted "laboratory equipment or supplies" or whether the items, if possessed, were sufficient to infer a specific intent to engage in a clandestine laboratory operation.[2]

> When reviewing an appeal based on sufficiency of the evidence, we view the evidence, and any applicable inferences based on the evidence, in a light most favorable to the State. *Nixon v. State*, 994 P.2d 324, 329 (Wyo.1999); and *see Pool v. State*, 2001 WY 8, 17 P.3d 1285 (Wyo.2001). In conducting such a review, we do not substitute our judgment for that of the jury; rather, we determine whether a quorum of reasonable and rational individuals would, or even could, have found the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

*McFarlane v. State*, 2001 WY 10, ¶ 4, 17 P.3d 31, 32 (Wyo.2001).

[¶ 10] Wyo. Stat. Ann. § 35–7–1059(a) provides, in pertinent part:

(a) It is unlawful for any person to knowingly or intentionally:

* * *

2. At trial, appellant stipulated that the water cooler and its contents constituted a clandestine laboratory operation and had been used to manufacture methamphetamine. Appellant's primary defense was that she did not "possess" the contraband.

(ii) Possess laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation[.] [3]

To establish "possession," the State must prove that appellant " 'either individually or jointly with another exercised dominion and control' " over the contraband, had knowledge of its presence, and that it was contraband. *Urrutia v. State*, 924 P.2d 965, 967 (Wyo.1996) (*quoting Wise v. State*, 654 P.2d 116, 119 (Wyo.1982)).

> "It is not necessary to offer direct evidence of the [appellant's] actual possession of the contraband. '[C]ircumstantial evidence linking together a series of facts' allowing a reasonable inference that the [appellant] had the requisite control and knowledge of the [contraband] is sufficient to show constructive possession. *Wise*, 654 P.2d at 119. The court must consider the totality of the circumstances when determining whether sufficient evidence was presented to allow the jury to infer that the [appellant] had the requisite control and knowledge of the contraband. *Urrutia v. State*, 924 P.2d 965, 967 (Wyo.1996)."

*Mora v. State*, 984 P.2d 477, 481 (Wyo.1999) (*quoting Seeley v. State*, 959 P.2d 170, 176 (Wyo.1998)).

[¶ 11] The aforementioned facts, when viewed in a light most favorable to the State, provide sufficient indicia of possession that a jury could reasonably infer that appellant "possessed" the contraband. The totality of the circumstances and accompanying inferences, including the nature of appellant's association with Mr. Browning and the Chevy Blazer, her fingerprints, the stains observed on the scales, appellant's hands, and the towel retrieved from appellant's belongings, in addition to appellant's own statements and the evidence contained in her possessions, establish a direct nexus between appellant, the water cooler and its contents, and the other items that comprised the clandestine laboratory operation; appellant knowingly exercised dominion and control over the contraband—she was, quite literally, caught "red-handed."

## CONSTITUTIONALITY OF WYO. STAT. ANN. § 35–7–1059

[¶ 12] Appellant next argues that Wyo. Stat. Ann. § 35–7–1059(a)(ii) is unconstitutionally vague. In particular, appellant contends that the statute does not define the terms "supplies" or "separatory funnel" and therefore does not "advise a person of ordinary intelligence what is prohibited conduct." According to appellant, the common dictionary definitions of these terms do not clarify their meaning to a degree that one could comprehend what conduct the statute prohibits.

[¶ 13] Appellant's argument is essentially a "facial" challenge. In challenging a statute for facial vagueness, the appellant must demonstrate that the statute reaches a "substantial amount of constitutionally protected conduct; [4] or the statute specifies no standard of conduct at all." *Campbell v. State*, 999 P.2d 649, 657 (Wyo. 2000). The ultimate test is "whether a person of ordinary intelligence could read the statute and comprehend what conduct is prohibited" because laws must provide explicit standards for those who apply them. *Id.* " 'A statute employs a standard, for purposes of

---

3. Wyo. Stat. Ann. § 35–7–1058(a)(iv) (LexisNexis 2001) defines "[e]quipment" or "laboratory equipment" as "all products, components or materials of any kind when used, intended for use or designed for use in the manufacture, preparation, production, compounding, conversion or processing of a controlled substance in violation of this article." The same section provides that "[e]quipment" or "laboratory equipment" includes a "[g]lass reaction vessel," "[s]eparatory funnel," "[g]lass condensor," "[a]nalytical balance," or "[h]eating mantle." Wyo. Stat. Ann. § 35–7–1058(a)(ii) defines "[c]landestine laboratory operation" as:

(A) Purchasing or procuring chemicals, supplies, equipment or a laboratory location for the illegal manufacture of controlled substances;

(B) Transporting or arranging for the transportation of chemicals, supplies or equipment for the illegal manufacture of controlled substances;

(C) Setting up equipment or supplies in preparation for the illegal manufacture of controlled substances; or

(D) Distributing or disposing of chemicals, equipment, supplies or products used in or produced by the illegal manufacture of controlled substances.

4. Appellant does not argue that the statute reaches any form of constitutionally protected conduct.

vagueness, if "by [its] terms or as authoritatively construed [it applies] without question to certain activities, but whose application to other behavior is uncertain," ' " whereas a vague statute impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. *Id.* (*quoting Luplow v. State*, 897 P.2d 463, 466 (Wyo.1995) and *Griego v. State*, 761 P.2d 973, 976 (Wyo.1988)).

[¶ 14]   According to two of our recent decisions, the statute, without question, applies to certain activities.   We first addressed the constitutionality of Wyo. Stat. Ann. § 35-7-1059(a) in *Statezny v. State*, 2001 WY 22, ¶¶ 13-14, 18 P.3d 641, 645 (Wyo.2001), finding "no suggestion" that the statute was "unconstitutional on the face of things . . . ." Subsequently, in *Browning v. State*, 2001 WY 93, ¶¶ 14-25, 32 P.3d 1061, 1067-69 (Wyo.2001) (an appeal by appellant's co-defendant), we specifically held that Wyo. Stat. Ann. § 35-7-1059(a)(ii) was not unconstitutionally vague on its face.   In light of this precedent, we decline to analyze Wyo. Stat. Ann. § 35-7-1059(a)(ii) further in the context of appellant's facial challenge.   *See Griego*, 761 P.2d at 976.   The statute clearly is not so deficient on its face that it sets forth "no standard of conduct at all."

[¶ 15]   Affirmed.